## MYERS v. SOUTH FEATHER WATER COMPANY.

Plaintiff made a written contract with the defendants to dig for them a certain line of ditch for the conveyance of water, for which he was to be paid by the defendants in a certain specified manner. Plaintiff dug the ditch, and subsequently assigned and transferred his interest in the contract to L. & Co., to secure certain payments due from him to L. & Co., and authorized L. & Co. to receive from defendants payments from time to time, until the amount due them was liquidated, and L. & Co. gave defendants notice of such assignment, and defendants made several payments thereon. Plaintiff afterwards, and while L. & Co. yet held the assignment of the contract, and before their debt was paid off, demanded of defendants payment thereon, according to the stipulations of such contract, which was refused by defendants without assigning any reason therefor; whereupon plaintiff brought suit against defendants to recover the amount due on said contract: *Held*, that plaintiff, having transferred his interest in the contract to L. & Co., he had no right to make the demand, and that defendants had a right to refuse payment without assigning any reason therefor.

The assignment of plaintiff to L. & Co., operating by its terms as a present and effectual change of ownership in the subject-matter, the title is supposed in law to remain divested until it be affirmatively shown that the condition of defeasance has happened. It is not unlike a chattel-mortgage, which conveys the thing mortgaged, with power to collect hires and to use the chattel until the money secured thereby is paid; and, until payment is proved, all the right of the mortgagor to the mortgaged property passes to the mortgagee.

APPEAL from the District Court of the Fifteenth Judicial District, County of Butte.

Plaintiff had judgment in the Court below for the sum of $24,775 11, from which the defendants appealed to this Court. The facts of the case appear in the opinion of the Court.

*Mesick and Swezy* for Appellants.

BALDWIN, J., delivered the opinion of the Court—TERRY, C. J., concurring.

We are saved the necessity of investigating the multitude of points upon which the ingenuity of counsel has exhausted itself; as, in our opinion, a single objection taken by the appellant is conclusive, and requires the reversal of the judgment below.

The plaintiff brought this suit upon a contract made by him and the appellant, whereby the plaintiff agreed to dig for the company a certain line of ditch, which is particularly described, of given dimensions, and to be constructed in a given manner. In consideration of this, the respondent contracted to pay the plaintiff the sum of three dollars per rod of the excavation, at the office of the company at Forbestown—thirty-three and one-third per cent. on the completion of each mile, in cash, of its value, estimated at three dollars per rod; the remaining sixty-six and two-thirds per cent. at two dollars per rod, to be paid in water at the rate of twenty-five cents per square inch, deliv-

ered through an orifice under six inches of pressure, anywhere along and at the main ditch.    The contract proceeds :

"It is further agreed, between the parties contracting, that the parties of the second part shall reserve the right to pay the value of the excavation, or three dollars per rod, in cash, and also the right to appoint such agent, or agents, to manage the sale of water and other matters of the company, as they, the parties of the second part, may deem best for the interests they represent.    The parties of the second part agree to pay to the party of the first part the actual first cost of all the flumes the party of the first part may construct upon the line of the main ditch in the proportions of cash and water, as before specified for the excavation, viz. : one-third in cash and two-thirds in water, or, at the option of the parties of the second part, the whole amount in cash ; the water to be estimated, measured, and delivered, as before specified, for the excavation, under a pressure of six inches.

"The party of the first part further agrees to present true and accurate vouchers and accounts of all cost of said flumes at each time of payment.

"The parties of the second part agree to sell to the party of the first part, all the water the party of the first part may desire, that may run in said ditch, at the rate of twenty-five cents per square inch, and measured, as before specified, under a pressure of six inches, until the party of the first part is fully paid, according to the terms of this contract, for the work herein contracted for, and the party of the first part hereby agrees and binds himself to sell no water to any person or persons for a less amount than fifty cents per square inch, measured as before specified, under a pressure of six inches.    The parties of the second part agree to pay to the parties of the first part, the proceeds of all water sold by the agent, or agents, of the company, out of said ditch, until the party of the first part shall be fully paid for the construction of said ditch, according to the terms of this contract. All branch ditches shall be the property of the South Feather Water Company, upon the full payment of the terms specified herein, without further cost to the company.

"The party of the first part further agrees and binds himself not to extend, or cause to be extended, the main ditch to any place or in any manner without the consent of the company, and a special contract to that effect.    And the party of the first part further agrees and binds himself not to do or cause to be done anything that may be detrimental to the interest of the company.

"The party of the first part agrees to pay twenty-five cents per square inch for all and every first sales of water, anywhere along the lines of said ditch, or between its terminus and Feather River, until the terms of this contract are fulfilled."

The complaint, after charging that the work was executed

according to the contract, avers that, on the twelfth day of April, 1856, there remained due in cash on the contract, $1134 66, and $8125 34, payable in water, at twenty-five cents per inch, as by the terms of the contract; and the plaintiff avers that on the — day of December, 1856, he demanded of the defendant, at the office of the defendant, the sums due in money and in water, which demand was refused, and that the value of the water at the time it was due and payable, was worth one dollar per inch. The complaint claims the sum of $29,084 56, with interest from the twenty-sixth of December, the date of demand and refusal.

The defendant, in his answer, among various other matters, set up for a separate defence, as follows:

"And these defendants, in further answer to said complaint, and in defence to this action, aver that the said plaintiff, on the said thirtieth day of January, A. D. 1856, in order to secure his indebtedness at the time to the said copartnership of J. R. Lumbert & Co., and as security for the performance of the contract with said partnership aforesaid, transferred and conveyed his whole and entire interest in his contract with these defendants, first above mentioned, to the said J. R. Lumbert & Co., and authorized and empowered said copartnership to collect all payments that might fall due to him, from time to time, on the said contract, and to have and exercise all the rights and powers in the collection of water-rates, after the completion of said ditch, which the said plaintiff possessed thereunder, which instrument of transfer is endorsed upon the contract between the plaintiff and these defendants, and is in the words and figures following, to wit:

"'Natchez, Butte County, Cal., January 30th, 1856.—In consideration of my present indebtedness unto Messrs. J. R. Lumbert and Co., and an agreement or memorandum made and entered into this day, by them and myself—I do hereby transfer and convey my whole and entire interest in the within contract unto the said Lumbert & Co., or their assigns, with full power to collect all payments that shall fall due, from time to time, on the within contract; and in the collection of water-rates, after the completion of the ditch, they are to have all the rights and powers that the contract guaranties to the first party, until the said Lumbert & Co., or their assigns, are well and fully paid.                                          H. K. MYERS.

"'Witness: E. Barrell.'

"And these defendants, in further answer to said complaint, and in defence to this action, aver that the said firm of J. R. Lumbert & Co., afterwards, and on or about the first day of February, A. D. 1856, gave these defendants notice of their said agreement with the plaintiff, and of his transfer to them of his interest in his contract with these defendants; and these defendants accordingly paid to said J. R. Lumbert & Co., upon

said contract transferred to them, on account of the plaintiff, on the twenty-eighth day of March, A. D. 1856, the sum of one thousand dollars, and, on the ninth day of January, A. D. 1857, the further sum of five thousand seven hundred and ninety-five dollars and five cents, in payment of the balance due on the first day of November, one thousand eight hundred and fifty-six, by the plaintiff to the said J. R. Lumbert & Co., for moneys advanced and goods furnished, pursuant to the contract aforesaid between them, and upon the indebtedness from him to them, referred to in said contract, and for the security of which the transfer of the original contract between the said plaintiff and defendant was made by the plaintiff to J. R. Lumbert & Co., as above mentioned, and which balance these defendants had agreed to pay to said J. R. Lumbert & Co., on the said first day of November, 1856."

The case was tried by the Court, and its findings appear in the record. Among them is this: that the plaintiff alleges that the water was worth one dollar an inch, which is not denied, and is found as fact.

It will be seen that the title of the plaintiff to the recovery for the value of the water accrues from the demand made for it; for, whether election to take the water or the money be in plaintiff or defendant, it is necessary to make a demand in such cases as this, to determine or to notify the election; or, even if this were not so, yet, as the standard of recovery, in this case, is alleged and adjudged to be the value of the water *when demanded*, and the Court predicates its finding upon the value at that time, it is necessary that such demand should be legally made, and by some one having authority to make it.

It does not follow, by any means, nor could the Court judicially know, that any article—much less water, contracted for at twenty-five cents per inch, and proved on a certain day, or at certain times, to be worth a dollar an inch—is always, or is at any other time than that proved, worth the sum proved at the given time.

The demand by the party entitled, in such cases as this, puts the other party in default, but in this case it also establishes the measure of damages for the default.

The demand was made, it seems, by the plaintiff, *in December*, 1856; the sums due became liquidated in April, 1856; the assignment to Lumbert & Co. was made on the thirtieth of January, 1856. This assignment transferred all the right, title, and interest of the plaintiff to Lumbert & Co., who, from thenceforward, had all the benefits of that contract, until, at least, the sums of money provided for in the agreement were fully paid. Of this assignment, the defendant had notice shortly after its execution.

It is true, that Lumbert & Co., in January, 1857, transferred

this agreement to the defendant; and even it might, for the argument, be conceded, that they had no right so to do—at least, that they could not, by the transfer, place the defendant in any better situation in respect to the subject of the contract than the assignors occupied; but this transfer was not made until *after* the demand alleged.   Nor was the effect of it to give to the *plaintiff* any greater rights than he held before.

There is no evidence, that we can see, and no finding of the Court, that, at the time of this demand, the debts secured by the assigned contract to Lumbert & Co. were paid off; indeed, it is not possible to understand, from the papers, the exact sums due, or which were intended to be secured by this agreement.

The assignment of plaintiff to Lumbert & Co., operating by its terms a present and effectual change of ownership in the subject-matter, the title is supposed in law to remain divested until it be affirmatively shown that the condition of defeasance has happened.   It is not unlike a chattel-mortgage, which conveys the thing mortgaged, with power to collect hires and to use the chattel until the money secured thereby is paid ; and, until payment is proved, all the right of the mortgagor to the mortgaged property passes to the mortgagee.

If the defendant had paid to the plaintiff, after notice of this transfer, it is clear it would have paid in its own wrong, and might have been compelled to pay to Lumbert & Co.   The defendant, certainly, is in no default for not paying to plaintiff, when and what he was under no obligation to pay.   The plaintiff, on the facts stated, had no right to make the demand, and, from anything that appears, it would have been a fraud in him if he had received the money or water demanded.   The defendant refused the demand, without assigning any reason; nor was it bound to assign any.

It is said that this defence was taken in argument, for the first time, in this Court.   This may be.   But it is a defence which is directly and clearly set up in the answer.   It may be true, that, following the averment of the fact of assignment, are some allegations of partial payment to the assignees.   But we apprehend this makes no difference.   If A is sued by B, on a promissory note, and he sets up in his answer that B sued him on the note and obtained judgment, and, further, that he paid a part of the judgment, we presume (especially if no demurrer be interposed for duplicity) that the plea of judgment recovered would not be less effectual, because associated with the unnecessary fact of payment of the judgment, or in part.   The latter portion of this answer may be regarded as surplusage, without at all impairing the force of the matter first stated—which, as we have shown, defeats the recovery, as it appears of record.

Judgment reversed, and cause remanded.

[Field, J., having been counsel in the Court below, did not sit in the case.]