## MYERS v. SOUTH FEATHER RIVER WATER CO.

PLAINTIFF contracts to dig a ditch for a water company, the company agreeing to pay three dollars per rod—one-third of it in money, on the completion of each

Myers *v.* South Feather River Water Co.

mile—the other two-thirds to be paid in water, at the rate of twenty-five cents per square inch, delivered through an orifice, under six inches of pressure, anywhere along, and at, the main ditch; the company having the right of paying the two-thirds in cash instead of water, if they so elect. *Held*, that said two-thirds, if elected to be paid in cash, need not be paid as the other third, on the completion of each mile.

If the payment be made in water, it could not be claimed before the completion of the ditch, and the cash cannot be required sooner.

Plaintiff having assigned this contract to L. & Co. as security for a debt due them by plaintiff, they demanded of the company payment of whatever was coming to plaintiff. The company elected to pay, and did pay, in cash, on a statement as of so much due in money. *Held*, that even if L. & Co. had no right to receive money instead of water, yet the payment binds plaintiff, for they were acting ostensibly for him, or by his authority; that if he denied their authority, the payment would not discharge his debt to L. & Co. the assignment would remain in force, and the plaintiff would have no cause of action here; that if he affirmed the arrangement made by L. & Co. in part, he must give full effect to it, and thus confirm the settlement, as the liquidation of a money demand.

If the company paid L. & Co. more than was due them from plaintiff, he must look to L. & Co. The assignment being general, L. & Co. were authorized to receive the entire amount, and became Trustees of plaintiff for the excess.

APPEAL from the Fifteenth District.

The facts can be gathered from the opinion in 10 Cal. 580 and the opinion on this appeal. The matters set up in the answer of defendants, as set forth in 10 Cal. 581, 582, were proven. On the last trial it appeared, that at the settlement between plaintiff and defendant, April 12th, 1856, there was due plaintiff eight thousand one hundred and twenty-five dollars and fifty-four cents. Lumbert & Co. having demanded this sum, Nov. 1st, 1856, and defendant then electing to pay in cash, instead of water, paid L. & Co. five thousand six hundred and thirty-two dollars and fifty-nine cents, on account of the contract. This was a little more than was due L. & Co. from plaintiff. After deducting this sum, together with the judgment against plaintiff, paid by defendant, from the eight thousand one hundred and twenty-five dollars and fifty-four cents, the Court below found a balance due plaintiff of about one thousand one hundred dollars, allowing interest only from Nov. 1st, 1856, the time of demand made by Lumbert & Co. But, as defendants had, at the institution of the suit, tendered a larger sum, which plaintiff refused, they recovered costs. Plaintiff appeals.

*Robinson, Beatty & Heacock,* for Appellant.

1. Had the defendants a right to elect to pay cash at any time after the settlement of the 12th of April, and after Myers had been put in possession of a portion of the water?

2. If they did have a right so to elect, and did elect to pay cash, was not Myers entitled to interest on the amount due him from the day of settlement?

To determine the first proposition, we have only to discover the intention of the parties to the contract as to the time of payment. The work to be performed was of two kinds: first, ditching, which was to be paid for at the rate of three dollars per rod, equivalent to nine hundred and sixty dollars per mile. For this work one dollar per rod, equal to three hundred and twenty dollars per mile, was to be paid at the office of the company on the completion of each mile. So far as this payment is concerned the instrument is clear. For the other two-thirds of the compensation, equal to six hundred and forty dollars per mile, the contract provides primarily that it shall be paid in water, delivered along the line of the canal.

The defendants, however, reserve the right to pay the whole price in cash, (see Section 8,) at their own election, no time being fixed at which they are to exercise this right of election. No time being fixed when they are to pay the whole price in cash, is it not clearly to be inferred that they are to pay the whole price of each mile, if paid in cash, at the completion of that mile? The parties carefully provide that one-third shall be paid at Forbestown at the completion of each mile. There is, however, a provision that defendants may at their election pay three-thirds, or the whole, in cash. If they do elect to pay three-thirds in cash, is it not certain that it must all be paid together? The two-thirds must be paid when and where the one-third is. There is nothing in the contract to sever these amounts. Therefore, if the defendants elected to pay all in cash, they must have so elected at the time they made payment for each completed mile. They should not only have elected, but should have performed or executed said election by actual payment. (*Topping* v. *Root*, 5 Cow. 404; 14 Texas, 222; 6 Id. 273; 7 Johns. 464; Sedg. 202, 203; 7 Ala. 775; 11 Texas, 280.)

If the defendants were not barred the right of election by the lapse of time, still the plaintiff had an undoubted right to show

that defendants had elected to pay in water.  They having once elected to pay in water, they could not abandon that election and make a new election to pay in cash.

On the 12th of April, 1856, a settlement was made.  At that settlement, the amount of the value of the work done was adjusted, and it provides that the work shall be paid for according to contract.  There is nothing said in that settlement about paying in cash.  It is alleged in complaint, and not denied in the answer, that up to, and by, the 12th of April, one-third of the price of all the work had been paid in cash.  It is not pretended that one cent over the one-third had been so paid.  Here seems to have been a complete severance of the one-third and the two-thirds payments made at or before the time of settlement.  Immediately after the time of the settlement, Myers went into possession of a part of the water.  Defendants do not deny this fact, but allege that they gave him the water.  The fact that he had the water just after the settlement, is both admitted and proved.

We further lay down this proposition, that, taking the whole instrument together, the term "in cash," does not merely mean a payment to be made in current coin, but rather a payment which was to be made promptly on the completion of each piece of work, and on which defendants were to have no credit or extension of time beyond the day when the work was completed.  On the other hand, the payment of the two-thirds in water did not literally mean that the two-thirds should be wholly paid in water, but rather by the proceeds of the sale of water.  The whole payment was in fact to be nothing more than a deferred payment in cash—a payment in cash as it could be realized from the sales of water.  But, as Myers was to wait an indefinite time for the two-thirds of his pay, he was to be compensated for that delay.  The mode of that compensation was this : the water was to be sold either by Myers or by the agents of the company; the price at which it was to be sold was to be not less than fifty cents per inch.  The proceeds of all sales were to belong to Myers, but he was only to be charged by the company twenty-five cents per inch for all sales of first head of water.

If the price of the work was payable in cash; in other words, if the defendants have a right to discharge their obligation by

paying the whole price in cash, they must pay interest from the day the accounts were settled.

On the 12th of April, 1856, there was a settlement of accounts. On that day one-third of the price of the work was paid. For the other two-thirds something was due to Myers; eight thousand one hundred and twenty-five dollars and thirty-three and one-third cents was payable to him according to the terms of the contract. Now, at that day, a proper interpretation of the contract would have shown what was payable. Myers was either entitled to water or money on that day; if water, he is now entitled to the value of that water; if money, he is entitled to interest on that money. (Wood's Dig. 551, Art. 2838, Sec. 1.)

*C. Cole*, for Respondent.

The only debatable point in this case is, as to the time and manner of paying the last two-thirds of the price of work done.

The Respondents maintain that the two-thirds was payable primarily in water, at twenty-five cents an inch, as fast as plaintiff desired it; or at the option of defendants, in the proceeds of water sold out of the ditch, by their agents, whether such sales were made to plaintiff, or others. The ditch, so far as it related to these two-thirds, was to pay for itself—one-third having been paid in cash. The defendants reserved to themselves the right so to pay. It was their privilege—option—and the plaintiff had no election.

Defendants "reserve the right to pay in cash, and also the right to appoint such agent, or agents, to manage the sale of the water," as, etc. If the right to pay in cash meant "no credit or extension of time beyond the day when the work was completed," why should they reserve the right also to appoint agents?

There is a change in the language used in the contract in reference to this point, which is significant. At first the words are, "shall be paid in water," but after the reservations by defendants of the right to appoint agents, and pay in cash, the language used is, "the parties of the second part agree to sell water," and, they "agree to pay the proceeds of all water sold;" and, again, he, "plaintiff, agrees to pay for all water." The words "pay in water," or their equivalent, do not again occur.

Primarily, then, the two-thirds were to "be paid in water,"

"any where along and at the main ditch;" and, secondarily, at the option of defendants in the cash proceeds of water sold "out of said ditch," by the agents of defendants.

This case is like that of the sale of a saw-mill. A sold a mill to B, and was paid half in cash, and was to be paid the balance in lumber, at twenty dollars per thousand feet; or, if B preferred it, in the proceeds of the sales of all lumber sold from the mill, till A was fully paid. If B chose to pay thus in cash, he was to sell A what lumber he needed at twenty dollars per thousand feet; but A was not again to sell it for less than forty dollars per thousand feet. This last restriction prevents A from interfering with the market value of lumber, or the customers of B. If, with this understanding, B sells lumber at thirty dollars per thousand feet, and pays the proceeds to A, it is all fair, and A cannot complain.

In a case like the one supposed, when is the last half of the price of the mill payable? Clearly, when it accrues from the sale of lumber, and not sooner, unless the defendant may have "disabled" himself from fulfilling his contract. (Chitty on Cont. 627; 20 Pick. 111; 5 Ohio, 514; 13 M. & W. 614—618.)

And a demand before suit, in such a case, is necessary, unless the defendant has "disabled" himself from fulfilling. (8 Q. B. 371; 15 M. & W. 189.)

Myers has not shown that any money has accrued from the ditch in the hands of defendants; nor that defendants had "disabled" themselves from performing their contract, nor has he shown any demand.

Possibly, a question might arise as to whether the defendants had the right to pay any faster than money accrued from the sale of water. In that case, the plaintiff would have the right to water at twenty-five cents an inch for his own use, until such water, together with the proceeds of water sold, paid him all off.

The rule of law upon this point is, that when a debt is payable in money, or goods, the payor has the right to pay in either, at any time while the privilege lasts. (Penn. 301, and others.)

When a contract is silent as to the time of performance, the law implies an engagement that it shall be done within a reasonable time. (Chitty, 625, and authorities cited.) The limit in this case is, when the money accrues from the ditch.

The assignment to Lumbert & Co. was made on the 30th of January, 1856, and defendants then had notice of it; and the assignment remained until January, 9th, 1857.   The settlement upon the cost of the work took place on the 12th of April, 1856, during the assignment.   How then can Appellant's counsel maintain that "Myers was either entitled to water or money on that day?"   (10 Cal. 582.)

BALDWIN, J. delivered the opinion of the Court—COPE, J. concurring.

This case, involving the construction of a certain contract, was here before.   The contract is fully set out, and will be found in 10 Cal. 580.   After the return of the cause, it was tried again, and is brought up, by the plaintiff on appeal, from the judgment of the District Judge, who tried the case without a jury.   The contract was to dig a ditch by plaintiff for defendant, and the question arises as to the construction of the following sections of the contract:   " For and in consideration of which, the parties of the second part agree to pay to the party of the first part, the sum of three dollars per rod for each and every rod of the above mentioned excavation, made according to the terms of this contract, at the time, place, and manner, hereinafter mentioned, viz.: they shall pay at the office of the company, at Forbestown, thirty-three and a third per cent. on the completion of each mile, in cash of its value, estimated at three dollars per rod; the remaining sixty-six and two-thirds per cent. or two dollars per rod, shall be paid in water, at the rate of twenty-five cents per inch, delivered through an orifice under six inches of pressure anywhere along, and at, the main ditch.

Sec. 8.   It is further agreed, between the parties contracting, that the parties of the second part shall reserve the right to pay the value of the excavation or three dollars per rod in cash, and also the right to appoint such agent or agents, to manage the sale of water and other matters of the company as they, the parties of the second part, may deem best for the interest they represent.

Sec. 9.   The parties of the second part agree to pay to the party of the first part the actual first cost of all the flumes the party of the first part may construct upon the line of the main ditch,

in the proportions of cash and water as before specified, for the excavation, viz.: one-third in cash, and two-thirds in water; or, at the option of the parties of the second part, the whole amount in cash—the water to be estimated, measured, and delivered, as before specified for the excavation, under a pressure of six inches.

Sec. 11. The parties of the second part agree to sell to the party of the first part all the water the party of the first part may desire, that may run in said ditch, at the rate of twenty-five cents per square inch, and measured as before specified, under a pressure of six inches, until the party of the first part is fully paid, according to the terms of this contract for the work herein contracted for; and the party of the first part hereby agrees and binds himself to sell no water to any person or persons for a less amount than fifty cents per square inch, measured as before specified under a pressure of six inches.

Sec. 12. The parties of the second part agree to pay to the party of the first part the proceeds of all water sold by the agents or agent of the company out of said ditch, until the party of the first part shall be fully paid for the construction of said ditch according to the terms of this contract; all branch ditches dug shall be the property of the South Feather Water Co. upon the full payment of the terms specified herein, without further cost to the company.

Sec. 15.    The party of the first part agrees to pay twenty-five cents per square inch for all or any first sales of water anywhere along the line of said ditch, or between its terminus and Feather River, until the terms of this contract are fulfilled."

We construe this agreement, taken together, to mean this: That the company should pay three dollars per rod—one-third of it in money—on the completion of each mile, at the office of the company; the other two-thirds to be paid in water, at the rate of twenty-five cents per square inch, delivered through an orifice under six inches of pressure, anywhere along, and at, the main ditch. But this obligation to pay in water, as by the 7th Section, was not unqualified. The 8th Section gives the defendant the option to pay all in cash or money. But it does not follow that the two-thirds, if elected to be paid in money, were to be paid as the other third, in money, on the completion of each

mile. The first provision is for a payment in water; this provision is changed by the 8th Section into a provision for a payment in cash, at the election of the company. The payment in water would have been as the water was demanded anywhere along the ditch, and would not, of course, be due until the whole ditch was completed; and when this term was changed by an alteration in the medium of payment, it is not to be considered as altering any other of the terms of the contract except the medium. It nowhere appears that the contract was considered more beneficial to the plaintiff with this term for the payment in water, than a provision for payment in money. The remainder of the 8th Section, reserving the right of the company to appoint such agent or agents to manage *the sale of water* and other matters of the company, as they shall deem best, etc. seems to support this view; for if the plaintiff was to be entitled at once, on the completion of each mile, to the sum in cash, there was no use for this reservation, nor would there be if payment was to be made in specie in water. The words seem to imply that the plaintiff was interested in the sales, and in the manner of selling the water. The 12th Section, too, seems to look the same way—the parties of the second part agreeing to pay to the party of the first part the proceeds of all water sold by the agents of the company out of the ditch, until he shall be paid for the construction of it according to the terms of the contract. We think the whole contract results in this—that the company was to pay one-third in cash, on completion of each mile, etc.; that for the balance, they might pay after the completion of the ditch in money or water as they chose; if payment was made in water, the plaintiff might select the water anywhere along, and at, the main ditch; if in cash, or money, payment was to be made out of the proceeds of the sale of water. And by the 11th Section, there was given the plaintiff a right to take water, if payment was not otherwise made, at twenty-five cents per inch.

But it is not, perhaps, necessary to give a definite construction to this contract—which is awkwardly and obscurely drawn—for the contract, before the completion of this work, was assigned to Lumbert & Co. as security for a debt due them by plaintiff. We passed upon the effect of this assignment in this

case at a former term. It transferred, as we then held, the whole benefit of the contract to the assignees. They demanded, on the 1st November, 1856, payment of this money—or, at least so much as was coming to them from Myers. The defendant elected to pay, and did pay, in money. The payment to Lumbert & Co. was in money, on a statement as of so much due in money. Even if Lumbert & Co. had no right to receive this money, but only water, as the plaintiff contends, yet this payment would bind the plaintiff—for Lumbert & Co. were acting ostensibly for him, or by his authority. If he denied the authority, then the payment would not discharge the debt of Lumbert & Co.—in which case the assignment would remain in full force, and the plaintiff would, under our previous decision, have no right of action. Affirming the arrangement between Lumbert & Co. in part, the plaintiff must give full effect to it, and in doing this, he confirms the settlement as the liquidation and arrangement of a money demand.

If we concede that the election was with the plaintiff to take his pay in money or water, the argument of the learned Judge below is conclusive; for, by the assignment, the right of election passed to Lumbert & Co. and their action settled it as a money demand. And, if the right of election were with the company, the result, of course, is the same.

It seems that the company paid Lumbert & Co. one hundred and sixty-two dollars more than was due them—as the debt coming from Myers—which sum is deducted from the credit given to the company on the indebtedness on account of this contract. But we do not see how this deduction was properly made; for the assignment to Lumbert & Co. was general, and the authority given to the assignee, general, to control and receive money, etc. on this contract between Myers and the company. The company were not bound to examine the state of account between Lumbert & Co. and Myers, and pay at its peril only such sum as was rightfully due. The payment for this whole amount was good under this general power, Lumbert & Co. being the Trustees of Myers for any excess of money received over the amount of their claim.

But, according to our view of the case, independently of this fact, we do not see any error in the judgment of the Court in

refusing to allow interest, as no showing was made that the receipts of the sales of the water, to the time of the settlement with Lumbert & Co. or with Myers, before, (if he had any authority to liquidate the sum due,) was sufficient to pay the debt. If there was, this sum improperly deducted—this being a matter found by the Court on uncontradicted evidence—would restrain us from interfering with the judgment below, in order to change the judgment for costs.

One or two other errors are assigned, but, in the view we have taken of the question, they become unimportant.

Judgment affirmed.