[No. 12337.    In Bank. — December 2, 1890.]

## CUTTING PACKING COMPANY, RESPONDENT, *v.* THE PACKERS' EXCHANGE OF CALIFORNIA, APPELLANT.

ASSIGNMENT — NON-NEGOTIABLE CONTRACT OF SALE. — A non-negotiable contract of purchase and sale may be transferred by indorsement, so as to transfer all the rights of the assignor, subject to all equities and defenses of the other party to the contract at the time of the indorsement.

ID. — BURDEN OF OBLIGATION — NOVATION. — The assignor of the contract cannot, however, be released from his burden of obligation to the other contracting party, if he refuses to consent to a novation.

ID. — OBLIGATION OF ASSIGNEE — SURETYSHIP OF ASSIGNOR. — When the assignee takes the benefit of the contract, he also assumes its burden, so far as it is apparent upon the face of the contract, and the assignor, if not released from liability, stands in the relation of a surety for the performance of the obligation by the assignee, who is bound to fulfill the terms of the contract.

ID. — IMPLIED CONTRACT BETWEEN ASSIGNOR AND ASSIGNEE. — An implied contract arises between the assignor and assignee of a non-negotiable instrument, whereby the latter becomes bound to the former to perform the contract according to its terms.

ID. — BREACH OF IMPLIED CONTRACT — ASSIGNMENT OF CROP — ACTION BY ASSIGNOR — DAMAGES. — If the assignee of a contract for the purchase and sale of a crop of fruit refuses to accept and pay therefor, the assignor may sue him for breach of his implied contract, and recover as damages the difference between the price paid by him under the contract of purchase and sale, and that realized from the sale of the fruit in open market at current rates.

ID. — CONTRACT FOR SALE OF FUTURE CROPS — POTENTIAL EXISTENCE. — When crops of fruit contracted to be sold for a series of years are to be the product of trees owned by the vendor at the time the contract was made, they must be considered as having a potential existence, and as being subject to sale; and an assignee of such contract acquires the right to purchase the fruit for each of the seasons subsequent to the assignment, and assumes the burden of paying the contract price therefor.

APPEAL from a judgment of the Superior Court of the city and county of San Francisco.

The facts are stated in the opinion of the court.

*A. N. Drown,* for Appellant.

*Olney, Chickering & Thomas,* for Respondent.

WORKS, J. — This appeal is brought here on the judgment roll, which includes a bill of exceptions, from a judgment rendered in favor of plaintiff in an action for damages for breach of contract tried before the court without a jury.

In September, 1881, the plaintiff and one William C. Blackwood made the following contract of purchase and sale: —

"SAN FRANCISCO, September 17, 1881.

"Bought of W. C. Blackwood his crop of apricots at Haywards, for the seasons of 1882, 1883, 1884, 1885, and 1886, not less than seventy-five tons and not exceeding two hundred tons per annum, at three cents per pound f. o. b. Haywards.     CUTTING PACKING COMPANY,

"By A. D. CUTTER."

"SAN FRANCISCO, September 17, 1881.

"Sold Cutting Packing Company my crop of apricots at Haywards, for the seasons of 1882, 1883, 1884, 1885, and 1886, not less than seventy-five tons and not exceeding two hundred tons per annum, at three cents per pound f. o. b. Haywards.     WM. C. BLACKWOOD."

Plaintiff assigned its interest in the contract to the defendant about March 15, 1882, but Blackwood refused to accept the defendant in place of plaintiff.

Blackwood, between July 10, and August 15, 1884, in performance of the contract upon his part, delivered to plaintiff, in different lots, 235,693 pounds of apricots, which the plaintiff, from time to time as they were delivered to it, tendered to the defendant, which refused to accept or pay for each or any lot so tendered.

Plaintiff, as each lot was refused, placed it on sale in open market, and realized from the whole, after the cost of freight and seller's commissions were deducted, the net sum of $4,770.50.   This sum was $2,300.29 less than the amount it was compelled to pay Blackwood.

The two papers, above set forth, were construed in *Blackwood* v. *Cutting Packing Company,* 76 Cal. 212, 9

Am. St. Rep. 199, to be a contract of purchase and sale. It was a non-negotiable contract in character, but under section 1459 of the Civil Code, it could be transferred by indorsement, the same as a negotiable instrument. "Such indorsement," the same section further provides, "shall transfer all the rights of the assignor under the instrument to the assignee, subject to all equities and defenses existing in favor of the maker at the time of the indorsement."

But the burden of the obligation that rested upon the plaintiff—that is to say, to pay to Blackwood three cents per pound for any quantity of apricots between seventy-five tons and two hundred tons, for the seasons specified in the contract — could not be transferred without the consent of Blackwood. (Civ. Code, sec. 1457.) And as he refused to consent to a novation by accepting the defendant in place of plaintiff, so as to release the latter, which he might have done (Civ. Code, sec. 1531, subd. 2), the relations of himself and the plaintiff as to such burden were not affected by the assignment of the contract.

Section 1457 is only intended to protect the party to be benefited from the effects of the assignment of an obligation. So far as the parties to this suit are concerned, the appellant contracted with the respondent to accept and pay for the fruit Blackwood had contracted to deliver to the latter. It could make no difference, therefore, whether the fruit was delivered to the appellant by Blackwood directly, or by the respondent. As between the parties to this suit, the appellant was bound to receive and accept the fruit, and it cannot relieve itself from this obligation by showing that Blackwood had refused to relieve the respondent from its obligation to him.

As the fruit contracted to be sold was to be the product of trees presumably owned by Blackwood at the time the contract was made, it must be considered as having had a potential existence at that time, and was therefore

subject to sale. (*Arques* v. *Wasson,* 51 Cal. 620.) This being so, although the contract was construed in *Blackwood* v. *Cutting Packing Company,* 76 Cal. 212, 9 Am. St. Rep. 199, as not having passed the legal title to the fruit before the same was delivered, the plaintiff here at least acquired the right to purchase the fruit, and the assignment of the contract transferred such right to the defendant, whereby it became alone entitled to purchase the fruit for each of the seasons that occurred subsequent to the assignment. (*Myers* v. *South Feather Water Co.,* 10 Cal. 579.)

Now, while the plaintiff was not released, as we have seen, from the burden of the contract by the assignment of it, yet when the defendant took the right to purchase the fruit, which was the benefit of the contract, it also assumed the burden of paying for the fruit, in accordance with the following principle of section 1589 of the Civil Code: "A voluntary acceptance of the benefit of a transaction is equivalent to a consent to all the obligations arising from it, so far as the facts are known, or ought to be known, to the person accepting."

The obligation thus assumed was apparent on the face of the contract. We therefore think it plain that, as the plaintiff, as assignor, was still bound to Blackwood to pay the price stipulated in the contract, notwithstanding the assignment, and as the defendant, as assignee, assumed such obligation, the plaintiff, as between it and the defendant, stood in the nature of a surety for the latter for the performance of the obligation. If this be correct, it then follows that, from the assignment, an implied contract arose between the plaintiff and defendant, whereby the latter became bound to the former to receive and pay for the apricots according to the terms of the original contract.

This is, we think, the proper construction of section 1457 of the Civil Code, under which the assignment of the non-negotiable contract in question was made. Al-

though the liability of an assignee to his assignor under that section has never been determined by this court, still we are fortified in our conclusion by the analogous doctrine prevailing in the state of Ohio, where a similar liability arises upon the transfer of shares of the capital stock of a corporation.    There, as in this state, the transferrer of shares by constitutional and statutory provisions continues liable to the creditors of the corporation who became such while the transferrer held the shares. And in the recent case of *Harpold* v. *Stobart*, 46 Ohio St. 397, 15 Am. St. Rep. 618, the supreme court of the state stated the doctrine under such provisions thus: "In construing these provisions, the holdings in this state are to the effect that the individual liability of stockholders attaches in favor of creditors at the time the debt is contracted or the liability incurred by the corporation, and that such liability is not discharged by the subsequent assignment or transfer of the stock, but the successive assignees impliedly undertake to indemnify or discharge the assignor from the liability which attached to him while he held the stock." (See also 2 Morawetz on Private Corporations, secs. 879, 888.)

This doctrine, it seems to us, is just and reasonable, because, if the transferee should be insolvent, the creditors of the corporation whose claims attached while the transferrer held the shares would not be affected by the transfer; while, on the other hand, if the transferrer, after. the transfer, pays his proportion of any indebtedness of the corporation that he was liable for, such payment certainly adds that much to the value of the stock he transferred, and the transferee should reimburse him for the outlay.    This last consideration would not apply in Ohio with the same force as in this state; for it appears, in *Harpold* v. *Stobart*, 46 Ohio St. 397, 15 Am. St. Rep. 618, that the liability of stockholders "is not a primary fund or resource for the payment of the debts of the company, but is collateral to the principal obligation which rests on

the corporation, and is to be resorted to only in case of the insolvency of the corporation, or where payment cannot be enforced by ordinary process." But in this state such liability is a primary fund or resource to which creditors of a corporation may resort, regardless of the solvency of the corporation. (*Morrow* v. *Superior Court,* 64 Cal. 383; *Mitchell* v. *Beckman,* 64 Cal. 117.)

It is clear that a breach of the implied contract thus created between the parties here was made when the defendant refused to accept and pay for the crop of 1884; and the plaintiff, upon the breach being so made, having stepped in and received and paid for the crop pursuant to the original contract, as it was obliged to do, thereby acquired the right to recover, as damages, from the defendant, the difference between the price paid under the contract to Blackwood, and that realized from the sale of the fruit in open market at current rates.

As the solution of this question is decisive of this appeal, we do not deem it necessary to discuss the other points made by the appellant, but will add that we discover no error in the record.

Judgment affirmed.

PATERSON, J., FOX, J., SHARPSTEIN, J., and THORNTON, J., concurred.

Rehearing denied.