[No. 42, First Appellate District.—September 15, 1905.]

## W. FRESE, Respondent, v. J. J. MOORE, Appellant.

CHARTER OF VESSEL—CONTRACT FOR LUMBER—ASSIGNMENT.—A contract to charter a vessel, and by the owners to furnish lumber for freight at a fixed price per thousand, is assignable without the consent of the owners. Although the assignor is not released by the assignment from the burden of the contract, the assignee takes all of the rights from the assignor thereunder.

ID.—CONSIDERATION OF ASSIGNMENT—OBLIGATION OF ASSIGNEE.—Where the assignee as a recharterer, in consideration of the assignment, agreed to pay a higher than the contract rate to the assignor, he is under an implied obligation to carry out the contract purchased, and to act in good faith with the assignor.

ID.—BREACH OF DUTY BY ASSIGNEE—RELEASE OF OWNERS—NEW CHARTER.—Where as the result of the breach of duty by the assignee to comply with the terms of the contract, the owners assumed to cancel it, and the assignee thereafter without the assignor's consent released the owners from the original contract, and took a new and different contract, though such release concludes the assignor, the assignee is directly liable to him for the consideration agreed to be paid, and cannot evade such liability by reason of the release or of the failure of the owners through his fault to carry out the original contract.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. J. C. B. Hebbard, Judge.

The facts are stated in the opinion of the court.

E. B. Young, for Appellant.

Nathan H. Frank, and S. Bloom, for Respondent.

COOPER, J.—Appeal from judgment in favor of plaintiff and from an order denying defendant's motion for a new trial.

The facts upon which the question as to whether or not the defendant is liable are in substance as follows: On November 3, 1897, the plaintiff (as party of the second part) entered into a contract with the Brunette Sawmill Company (as party of the first part), by the terms of which plaintiff chartered from said company the American barkentine

Wrestler for a voyage from Frazer River in British Columbia to Fremantle in Australia. The company agreed to furnish for plaintiff to said vessel at designated loading-place or places a full cargo of sawed lumber at the basis price of seven dollars net for rough merchantable, payable when cargo should be loaded. The charter party or contract contained the following clauses:—

"The said party of the second part agrees to pay to said party of the first part, or agent, for the use of said vessel during the voyage aforesaid, in cash without discount, at current rate of exchange on day of settlement, on the right and true delivery of cargo at port of discharge, for each one thousand feet board measure of lumber and/or timber delivered at fifty (50/—) sterling."

"Vessel to pay a commission at port of loading of (5) five per cent on amount of charter, in U. S. gold coin, at the exchange of $4.86 per £ sterling to W. Frese & Co., or order, to be consigned to charterer's agent at port of discharge, (inward only) free of commission at port of discharge."

"While at Puget Sound or British Columbia, as above, vessel to be consigned to charterer's agent, outward, and if in ballast also inward, free of commission, but paying them usual fee for doing custom-house business (not to exceed $25), and also to clear in the name of charterer."

"To the true and faithful performance of each and all of the foregoing agreements, we, the said parties, do hereby bind ourselves, our heirs, executors, administrators and assigns, each to the other in the penal sum of *estimated amount of charter.*"

The above shows not only a charter party, but a contract by the owners of the vessel to furnish a cargo of lumber for the vessel at a specified rate per thousand feet, and by plaintiff to pay not only the freight as per the charter party, but seven dollars per thousand for the cargo of lumber when loaded on the vessel.

On December 4, 1897, without the consent of the company, the plaintiff agreed to recharter to defendant the vessel, and assign the contract and charter party on the following terms: "57/6 to Fremantle, West Australia, other terms as per original charter party, copy herewith, combined with the cargo of lumber, at the basis price of $7.00 net for rough

merchantable, difference of freight between the above and the
original rate of 50/—to be paid to us in cash on completion
of loading, less the usual 6½% (six and one half per cent)."

On December 9, 1897, the plaintiff wrote to the mill com-
pany informing it of the transfer to defendant of the charter
party and the cargo, and in the letter stated as the reason
for the transfer: "We did so because our constituents, not
knowing your mill and the quality of lumber you turn out,
instruct us to draw only 80% of the f. o. b. price, leaving
20% guarantee of good delivery. We decline to entertain
this proposition."

December 14th the company wrote to plaintiff acknowledg-
ing the receipt of his letter and stated to plaintiff, "but can-
not consent to the transfer of the charter party. However,
as the party who purchased the cargo has refused to comply
with the terms, we will release you from the charter party,
as the owners of the Wrestler contemplate selling her on her
arrival here."

On December 21, 1897, the plaintiff again wrote to the
company, declining to accept the release from the charter
party, and calling attention to the fact that he had sold to
the defendant, and in the letter stated, "We of course are
responsible to you for the strict fulfillment of contract as
signed by us."

December 21, 1897, the defendant wrote to the company
informing it of the transfer by plaintiff of the charter party
and the right to the cargo of lumber to him, and asking for
certain changes as to freight rates and place where the vessel
was to land. On the receipt of the above letter, December
23d, the company telegraphed to defendant: "We canceled
charter on 14th instant with Frese account purchaser refus-
ing cargo on our terms."

Defendant immediately telegraphed to the company that
he held indorsed charter party and had purchased cargo,
and that the charter must be carried out. On the following
day, December 24th, the company again telegraphed to de-
fendant, stating: "Frese cannot recharter without our con-
sent, which we refuse. Charter canceled."

Defendant then on the same day wrote the company, call-
ing attention to the various correspondence and telegrams,
and stated that he had purchased the cargo and the charter

party from plaintiff, and in the letter said: "What you mean by stating that Frese & Company could not recharter the vessel without your consent is a conundrum to us; a charter party can be transferred the same as any other negotiable document, be it promissory note, bill of exchange or anything else, and is an every-day occurrence, and till we received your message we never heard of the right to do so being questioned, and we cannot think that you were serious in believing that such could not be done. . . . Trusting that you will understand your position, and that there will be no more difficulty and annoyance about the transaction, we are," etc.

On the 28th the defendant again wrote to the company inclosing specifications for the cargo, and insisting on the company keeping its contract, and in the letter defendant said: "This morning we are in receipt of your wire as follows: 'Wrestler awaiting your orders to load, we refuse sell cargo on terms made Frese, he having already canceled.' To say that we are surprised at your actions in this matter would be putting it mildly; and that any responsible and respectable institution would try the various ways that you have tried to get out of this contract is astonishing. First it is one thing, and then it is another, one of which is as flimsy as the other; in fact your own telegrams to us would show in a court of justice that you yourselves know that you had no grounds wherewith to cancel the charter party or the lumber contract with Frese & Co."

On January 1, 1898, the lumber company wrote to defendant acknowledging telegrams and letters, and stating that it could not agree with defendant, and continuing: "However, we cannot supply the cargo your specifications call for and wired you as follows: 'Refuse to supply cargo; will charter you "Wrestler" to Sydney at 38/—. You buy cargo in Vancouver, and give you option for recharter coals from Sydney,' which we think is a very fair offer. Our mill is shut down at present undergoing repairs."

On January 8, 1898, defendant wrote to the company agreeing to charter the Wrestler on certain terms named in the letter, to load at Hastings Mills, Vancouver to Sydney, and in this letter defendant, without consulting plaintiff, stated: "And we agree to release both the 'Wrestler' and the Brunette Saw Mill Company from all our interests in

the charter party entered into with W. Frese & Co., for a voyage to Fremantle, under date November 3d, 1897, as well as our interests in the cargo of lumber which went with the charter party.''

Defendant, after releasing the sawmill company from the first charter party and contract, entered into a new charter party with the company by which he shipped to Sydney instead of Fremantle 564,000 feet of lumber, which at the rate of profit per thousand that Frese & Co. would have made, had the defendant held the sawmill company to its contract, would amount to $961.08, being the amount with interest for which plaintiff recovered judgment.

We are of opinion that plaintiff was entitled to judgment. His charter party and agreement to purchase lumber were property which he had a right to sell upon such terms as he saw fit. Defendant purchased the charter party and right to purchase the cargo of lumber for a consideration which he agreed to pay. The consideration was the difference in the freight rate in the original charter party and the rate named in the recharter. Defendant has not paid plaintiff. He purchased plaintiff's property and must, under the circumstances, pay the amount he agreed to pay.

The charter party and contract did not require any personal skill on the part of plaintiff, was one the covenants of which the defendant could perform as well as plaintiff, and was transferable. (Civ. Code, secs. 1044, 1459; *Cutting Packing Co.* v. *Packers' Exchange*, 86 Cal. 574, [21 Am. St. Rep. 63, 25 Pac. 52].) It was not necessary for the plaintiff to obtain the consent of the company in order to transfer the charter party and contract. Of course, the burden of the obligations could not be transferred without the consent of the company. (Civ. Code, sec. 1457; *Cutting Packing Co.* v. *Packers' Exchange, supra.*) Plaintiff did not attempt to transfer the burden of the obligations, but took the pains to inform the company that he was responsible for the strict fulfillment of contract signed by him.

Defendant, by the assignment of the charter party and contract, assumed its burdens on his part as to plaintiff. Plaintiff was not released by the company, and was still responsible to the company as surety to the effect that the defendant would faithfully carry out the charter party and contract.

There was an implied contract on the part of defendant to plaintiff that he would carry out the plaintiff's contract which he had purchased. (*Cutting Packing Co.* v. *Packers' Exchange, supra.*)

The indorsement and transfer of the contracts to defendant transferred all of the plaintiff's rights thereunder. (Civ. Code, sec. 1459; *Myers* v. *South Feather W. Co.*, 10 Cal. 579; *McCarthy* v. *Tecarte L. etc. Co.*, 110 Cal. 691, [43 Pac. 391]; *Allen* v. *Randolph*, 4 Johns. Ch. 692.)

It follows that when defendant released the company, the release was conclusive as to plaintiff. Plaintiff could not maintain an action against the company upon obligations which he had transferred and assigned to defendant. His remedy, therefore, was against defendant. After having transferred the obligations to defendant for a valuable consideration, defendant could not relieve himself of the payment of the consideration by releasing the company. Defendant contends that he was not liable to plaintiff for the freight under the recharter and assignment until the cargo was delivered, and, as it was never delivered, and the company refused to deliver it, the event never happened upon which defendant's liability depended. It is a conclusive answer to this contention that defendant, by his own act, released the company from its obligation to deliver the cargo of lumber. Defendant will not be allowed to take advantage of his own wrong. By his own act he prevented the performance of the obligation of the company to deliver the lumber, and the plaintiff is entitled to all the benefits he would have obtained if the contract had been performed by the company. (Civ. Code, sec. 1512.)

If the defendant had not released the company, and if after due diligence on his part he had failed to enforce the contract with the company, a different question would be presented; but after plaintiff sold to defendant the charter party and contract for a consideration the defendant was bound to act in the utmost good faith in the matter.

The judgment and order are affirmed.

Hall, J., and Harrison, P. J., concurred.