[Civ. No. 1618.   Third Appellate District.—April 26, 1917.]

## E. W. ROBINSON, Respondent, v. H. A. RISPIN et al., Appellants.

CONTRACT FOR DRILLING OF OIL WELLS—BREACH BY LAND OWNER—DAMAGES—LOSS OF PROFITS—PLEADING.—In an action by a contractor against a land owner to recover damages for breach of a contract for the drilling of oil wells, the profits on the contract are not too speculative and remote to be a basis for damages, and are recoverable without being specially pleaded.

ID.—ASSIGNMENT OF CONTRACT—LIABILITY OF ASSIGNEE.—While the mere assignment of rights under an executory contract does not

make the assignee liable to the other contracting party, yet, where after the assignment is made, the executory provisions of the contract are fully performed, the benefit inuring solely to the assignee, and where by his actions he holds himself out as personally liable and recognizes the original contract as binding upon him, he is liable to the other party equally with the assignor.

ID.—NOVATION—PAROL EVIDENCE.—A novation in a written contract may be proven by parol without violating the rule as to the inadmissibility of oral evidence to vary the terms of a written instrument.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco, and from an order denying a new trial. William D. Dehy, Judge presiding.

The facts are stated in the opinion of the court.

Boutwell Dunlap, and John E. Alexander, for Appellants.

R. H. Cross, for Respondent.

BURNETT, J.—On November 10, 1910, plaintiff and defendant Rispin entered into a written agreement for the drilling of certain oil wells in Kern County. Robinson agreed to furnish the tools and labor and drill two or more wells for which Rispin agreed to pay him $4.50 for each vertical foot drilled. Rispin was "to furnish all necessary fuel, water, tubing and casing at the well being drilled," and Robinson agreed to do the work according to certain specifications "in a thoroughly workmanlike manner under the instructions of said Rispin," and it was further provided that Robinson should not be compelled to drill to a depth exceeding one thousand feet in any one hole, and "that this contract shall cover a total of not less than 2000 feet of drilling and not less than two nor more than four wells and that there shall be no unnecessary delays by either party, either in the drilling of the wells or the furnishing of casing, fuel and water." On December 23, 1910, after Robinson had moved his crew and appliances to the land where the work was to be done, but before he had actually begun drilling, Rispin assigned all his right, title, and interest in said land (which he held under option agreements) and all his interest under said agreement with Robinson, to the defendant corporation, Lost Hills Central Oil Company. The court found that the defendant corporation accepted the assignment and the benefits and obliga-

tions arising from the agreement with Robinson, with full knowledge of all the facts relating thereto, and the work thereafter proceeded under its directions and instructions. The work was begun on December 28th and after innumerable delays, which the court found were caused by the failure of the corporation to furnish the necessary casing, fuel, and water, he succeeded, on or about the twenty-third day of February, 1911, in reaching a depth of four hundred feet, and it was mutually agreed that the well, known as "Well No. 1," should be abandoned as an oil well and should be converted into and used as a water well for further operations on the property. Plaintiff was thereupon paid one thousand eight hundred dollars for the said four hundred feet, and he moved his drilling appliances to another point on the land and he proceeded to drill well No. 2 until at the end of June, 1911, he had reached a depth of 907 feet. It was found that he could proceed no further by reason of the failure of appellants to furnish the necessary casing, and hence he ceased the drilling operations. After waiting until November 25, 1911, for defendants to furnish the casing to enable him to proceed with the work he brought suit to recover the amount due him for the work actually done, for the damages which he had sustained by reason of defendants' breach of their agreement to furnish him with the requisite fuel, water, and casing and damages for their refusal to permit him to go on and complete the drilling to the extent of the two thousand minimum feet provided in the contract. The court's judgment was in favor of plaintiff in the aggregate sum of $6,421.25 against the defendants Rispin and Lost Hills Central Oil Company and a several judgment against Benjamin Goodwin, A. B. Smith, H. A. Rispin, and J. S. Ourish as stockholders of said corporation, for the sum of $1,589.41 each.

At the trial appellants made common cause and they were represented by the same attorney. On the appeal another attorney appears for Rispin, and he and the other appellants assume a somewhat antagonistic attitude as to the proper theory of the case. However, they are in accord in urging several grounds for a reversal of the judgment and order denying the motion for a new trial and these will first receive attention.

Plaintiff was awarded the sum of $1,529.25 for the loss of the profits which he would have made if permitted to com-

plete the contract. As to the various objections to the particular finding some brief suggestions may be submitted.

The court was not bound to consider the four hundred foot well as though it had been drilled to the depth of one thousand feet. There was no agreement to that effect, according to the testimony of plaintiff, and in the original contract the number of feet actually drilled was the important consideration. The parties did not even contemplate that any well should be of definite depth, but there was a limit to the number that should be developed. There was no greater reason for crediting this particular well with one thousand feet than for so considering the other one of 907 feet. In view of the testimony of plaintiff that well "No. 1" was accepted as complete to be used for supplying water, and that it was not through any fault of his that it was drilled no deeper, the court was justified in the number of feet it allowed for said work.

As to damages, the rule is, no doubt, that those of a special nature must be pleaded. General damages are said to be the natural and necessary result of the act complained of, while special are the natural but not the necessary consequence of such act. It has been held, however, that the loss of profits on a contract of this kind is the necessary consequence of a breach, and therefore it is not required to be specially pleaded. (*Tahoe Ice Co.* v. *Union Ice Co.*, 109 Cal. 242, 249, [41 Pac. 1020]; *Germain Fruit Co.* v. *J. K. Armsby Co.*, 153 Cal. 585, [96 Pac. 319].) Nor are such profits too speculative and remote to be a basis for damages. This consideration is thoroughly discussed in *Shoemaker* v. *Acker*, 116 Cal. 239, [48 Pac. 62], and it is sufficient to quote therefrom the following sentence: "But where the prospective profits are the natural and direct consequences of the breach of the contract they may be recovered; and he who breaks the contract cannot wholly escape on account of the difficulty which his own wrong has produced of devising a perfect measure of damages."

Appellants are equally at fault in the contention that plaintiff failed to show that he was prevented by the defendants from completing the work. We need not quote from the record, but we deem it sufficient to say that plaintiff testified positively that defendants failed to supply him with the casing, fuel, and water as they agreed, and therefore it was impossible for him to continue the work. Furthermore, he

testified that they abandoned the enterprise and requested him to come to San Francisco to assist them in disposing of defendants' interest in the land. Plaintiff's case did not rest upon the theory that he was prevented by the failure of defendants to pay him what was due, and therefore the doctrine of the case of *Cox* v. *McLaughlin,* 54 Cal. 605, has no application. It is rather an instance of the failure to furnish material which was to be used in the work, and which was made a condition precedent to the performance by plaintiff, and it is governed by the principle expounded and applied in *Alderson* v. *Houston,* 154 Cal. 1, 3, [96 Pac. 884].

As to the damages caused by delay it may be said, also, that support for the finding is contained in the record. It is pointed out in respondent's brief, and it is not controverted in the final brief for appellants.

There was a dispute as to the number of shares of stock in defendant corporation held by some of the other defendants. However, the finding of the court in that respect seems abundantly supported. There was no controversy as to the number of shares outstanding and that said defendants were stockholders. It was admitted by the answer that Ourish owned twenty-five thousand shares. Rispin and Goodwin admitted on the stand that each owned the same number. Smith's testimony showed also that he was liable for twenty-five thousand shares, as he admitted that this number stood in his name as trustee for his son, a minor of the age of sixteen years. (Civ. Code, sec. 322.) We can see no valid objection to the method adopted for the proof of these facts. They were matters peculiarly within the knowledge of defendants, and they were competent witnesses to testify as to the number of shares owned by each. Indeed, plaintiff endeavored to have the books of the corporation produced, that the matter might be set at rest, but he encountered serious and persistent opposition. Steps were taken for this purpose as provided by section 1000 of the Code of Civil Procedure, but we need not follow them in detail. Appellants may have acted in good faith, but they seemed strongly averse to a complete inspection by respondent of the records involved in the controversy. We think, under the circumstances, that the court was justified in holding that its order in reference to an inspection of the books had not been complied with, and in assuming the

facts to be as claimed by plaintiff. However, aside from this, the evidence was sufficient to support the finding.

We have thus noticed the foregoing contentions, although we would probably be justified in concluding that they had been abandoned by appellants, as no reference is made to any of them in the closing briefs.

We come now to the points where appellants diverge and to which the closing arguments are addressed.

The contention of the corporation defendant, the Lost Hills Central Oil Company, is that it never assumed any liability under the contract made by Robinson and Rispin. There can be no doubt, however, that the record supports the finding of the court to the effect that Rispin transferred, set over, and assigned all his right, title, and interest, under the agreement made by him with Robinson, to the defendant corporation, this transfer having been made on December 23, 1910, while the contract was wholly executory; that the defendant corporation voluntarily accepted the assignment and the benefits and obligations arising from the transaction and the agreement with Robinson, with full knowledge of all the facts relating thereto, and thereafter requested Robinson to perform the work stipulated under and pursuant to the terms of that agreement. The evidence is epitomized in the brief of respondent but it is not necessary to repeat it here.

The case seems to fall clearly within the principle of *Cutting Packing Co.* v. *Packers' Exchange,* 86 Cal. 574, [21 Am. St. Rep. 63, 10 L. R. A. 369, 25 Pac. 52]; *Anderson* v. *De Urioste,* 96 Cal. 404, [31 Pac. 266]; *Frese* v. *Moore,* 1 Cal. App. 587, [82 Pac. 542], and section 1589 of the Civil Code. Of course, as suggested by respondent, the mere assignment of the rights under an executory contract would not make the assignee liable to the other contracting party. Such was the case of *Lisenby* v. *Newton,* 120 Cal. 571, [65 Am. St. Rep. 203, 52 Pac. 813]. But where, after the assignment is made, the executory provisions of the contract are fully performed, the benefit inuring solely to the assignee, and where by his actions he holds himself out as personally liable and recognizes the original contract as binding upon him, he is liable to the other party equally with the assignor. Such is this case, as was *Jones* v. *Allert,* 161 Cal. 234, [118 Pac. 794]. Indeed, there is much evidence in the record that the corporation was the real party in interest, Rispin being a mere intermediary.

Furthermore, we may say that if the court had found that there was a novation, the substitution of the corporation for Rispin with the intention of releasing the latter from liability, the finding would be supported. There is much in the record tending to this view. It will be sufficient to refer to a portion of the testimony of Rispin. He said that he presented to the directors of Lost Hills Central Oil Company the contract between him and Robinson and that they directed him what to do under the contract; that the corporation paid Robinson what was due under the agreement; that there was an understanding that the corporation was to assume the obligations of the contract; "that it would take my place in the contract with Mr. Robinson; that the contract would be practically between Mr. Robinson and the corporation, and not with myself"; and that he notified Mr. Robinson that the corporation had assumed the contract. In fact, appellants attempted to go further and show that at the time of the execution of the said contract between Robinson and Rispin it was understood and agreed that the corporation, when formed, should be substituted for Rispin. That attempt involves what appellant Rispin claims was a prejudicially erroneous ruling of the court. The purpose of the questions addressed to the witness was stated by counsel as follows: "I wish to show by Mr. Rispin and to follow that testimony up that at and subsequent to the time when this contract was executed, on November 10, 1910, there was a distinct agreement between Mr. Rispin and Mr. Robinson, an agreement incidental to the agreement of November 10, 1910, to the effect that that agreement as signed was to be assumed by a corporation which Mr. Rispin was at that time organizing, and that the corporation would take over and assume the liability under that contract; that there was an agreement between them to that effect. And following that I wish to show that that agreement was fully and completely executed and carried out and that the liability was assumed by the corporation; that the liability of the corporation was assented to by Mr. Robinson and that Mr. Robinson looked to the corporation as the party liable and released Mr. Rispin from all obligations because of the writing which was introduced by plaintiff here as the contract. Further that all the facts and circumstances surrounding the case are proper to be shown in order that the judge may properly construe the instrument in question; and

further that the evidence of what transpired at that time would be admissible upon the ground of showing lack of consideration as far as Mr. Rispin was concerned. Those matters, I believe, are fully set forth in the allegations of the answer, sufficient to have them admitted as evidence. If there is any question in the mind of the court that these matters are not fully set forth in the answer of Mr. Rispin so that this evidence should be admitted, I then ask for leave to amend so that those matters can be fully shown.'' The court, however, regarded it as an effort to vary the terms of the written instrument and would not permit the questions to be answered. In this we think the court erred. The purpose was not to vary the terms of the contract but to show a collateral agreement that the contract should be assumed by another. There is no doubt a novation could be shown by proving the substitution of another party for Rispin in the contract. (Civ. Code, sec. 1531, subd. 2.) In order to prove this, there must be, of course, evidence of an agreement to that effect. Plaintiff must have consented to it in order to constitute a novation. That he so agreed at the time of the execution of the original contract would naturally be a significant circumstance in the chain of proof relied upon to establish the novation. Proof of the substitution is not required to be in writing, but may consist of parol evidence. If it was not permissible to show such an agreement at the time the written contract was executed it could not be shown at all. The same objection could be made as to a question addressed to any subsequent agreement between the parties as at the time the written contract was executed. Upon respondent's theory the novation could not be proven unless it was embodied in a written instrument. This, however, is not the law, and the contention of respondent is based upon an erroneous conception of the rule as to varying the terms of a written instrument. In *Farmers' Nat. Gold Bank* v. *Stover,* 60 Cal. 387, 389, defendant attempted to prove that plaintiff had agreed that a certain note and mortgage was taken by plaintiff as substitution for and in full payment of the note sued on. The evidence was admitted and thereafter excluded. The supreme court said: ''This was error. The evidence which was admitted and afterward excluded tended to prove that the bank had accepted the individual note and mortgage of Stover as a substitute for the note in suit, for the purpose of extin-

guishing the obligation arising from it, or of releasing the
parties to it who had become insolvent. If the note and
mortgage were in fact taken as a substitute for the note in
dispute, with the intent of extinguishing the obligation of
it, and releasing the parties to it, the transaction constituted
a defense by way of novation under sections 1530, 1531, and
1532 of the Civil Code; and the defendants were entitled to
have it presented to the consideration of the jury upon the
evidence adduced to sustain it.'' As to the sufficiency of the
pleadings to present the issue, the supreme court therein
approved *Kirstein* v. *Madden,* 38 Cal. 158, and *Stringer* v.
*Davis,* 30 Cal. 318, wherein it was held that the trial court, if
application should be made therefor, should allow such amend-
ments to be made as will enable the court to try and deter-
mine the cause on the merits.

In *Guidery* v. *Green,* 95 Cal. 630, [30 Pac. 786], it was held
that parol evidence offered for the purpose of showing that a
subsequent written contract, which it is claimed superseded
and annulled a prior written contract upon which the other
is based, had been executed upon the consideration and agree-
ment that the prior contract should be canceled and all claims
of the plaintiff against the defendant thereunder waived is
not incompetent as having the effect to vary or contradict the
terms of either of the written instruments or to add any
terms thereto. Said the court: ''Such evidence is admissible
as is oral testimony that the terms of a written agreement
have been fully performed by the parties, or that the instru-
ment evidencing such agreement has itself been canceled and
destroyed by the concurrent act of both parties. In either
case the object and effect of such evidence is not to change
any of the terms of the contract, but to show that the contract
has no longer any existence, and therefore cannot be made the
basis of an action.'' So here, the purpose was to show that
said agreement no longer had any existence as between the
original parties, but that it had been superseded by a con-
tract between plaintiff and the corporation. That the terms
and conditions of the contract remained the same, that prac-
tically the only change was the substitution of another obligor,
manifestly presents no different legal aspect from the case
where an entirely different contract has been substituted.

If the rule is to be applied as claimed by respondent, then
no effect could be given to that portion of section 1698 of

the Civil Code which provides that "a contract in writing may be altered . . . by an executed oral agreement.". Such executed agreement could not be shown for the reason that it would be in effect to permit parol evidence to vary the terms of a written instrument. That a novation had been effected was one of the important defenses relied upon by appellant Rispin, and we think he should have been afforded the fullest opportunity to establish it.

As to the appellant corporation we may suggest that its attitude here appears quite inconsistent with its position at the trial. Therein all of the defendants, as we have stated, were represented by the same attorney, who insisted, as we have seen, that there was a complete novation, that the corporation had been substituted in the original contract for Rispin, and it complained somewhat bitterly because it was denied the privilege of making that clear to the court. It is true, also, that the motion for a new trial was joint and not several, and there is a joint appeal from the judgment. However, no point is made as to this, and we think justice requires that the judgment against Rispin for the sum of $6,421.25 should be reversed and a new trial had upon the issue whether he was released from liability upon the contract by virtue of said alleged novation, and that the judgment and order should be affirmed in all other respects. It is so ordered.

Chipman, P. J., and Hart, J., concurred.