NEW YORK PHONOGRAPH CO. v. DAVEGA.

(Supreme Court, Appellate Division, Second Department. June 5, 1908.)

1. CONTRACTS—PERFORMANCE—WAIVER.

E. and several companies controlled by him, engaged in the manufacture and sale of phonographs, entered into an agreement with another company manufacturing such machines, whereby they agreed to consolidate the businesses, and E. agreed to transfer all of his interests in the companies to the N. Company, which was organized for the purpose of consolidating the several companies, E. to receive a certain sum in several payments for his interest, and thereafter, in order to enable the N. Company to grant a license to plaintiff's predecessor to handle its goods in certain territory before the conditions of the original contract were fulfilled, the parties to the original agreement and the N. Company agreed that such license should be granted as fully as if the N. Company had made all payments to E. under the original contract. *Held* that, while the second agreement did not make E. a party to the license agreement from the N. Company, it was a waiver of full performance of the first contract by the N. Company before granting the license, so as to estop E. from denying the validity of the license granted by it.

2. JUDICIAL SALES—ASSUMPTION OF LIABILITIES.

A purchaser at a judicial sale of the assets of an insolvent corporation does not assume the latter's obligations.

3. SAME—PERSONS ENTITLED TO PURCHASE—GRANTOR OF CORPORATION.

E. sold his interests in several companies engaged in manufacturing phonographs to another corporation organized for the purpose of consolidating the several companies engaged in the business, and, the consolidated company thereafter becoming insolvent, he purchased its assets. Held, that E. could purchase the assets of the insolvent corporation, and there was no privity of contract between him and the grantee of a license of the insolvent corporation before its insolvency.

4. PATENTS—CONTRACTS.

E. entered into an agreement whereby he sold certain patents and his interest in several companies manufacturing phonographs to another corporation organized to consolidate the business, it agreeing to pay him a certain sum therefor in several payments, and to pay the expense of taking out subsequent patents by him which were to inure to its benefit, to exploit his inventions, and to purchase the patented articles from a corporation controlled by him. The consolidated company thereafter granted to plaintiff the right to use its inventions, and to manufacture and sell its machines in certain territory, and thereafter the consolidated company became insolvent and its assets were sold. *Held,* that plaintiff would only be entitled to subsequent patents by E. if the consolidated company would be entitled to them, and, when that company became incapacitated by its insolvency to perform its contract with E., his agreement with it so far as it was executory was discharged, and he was under no further obligation to make inventions for it or its licensees.

5. ASSIGNMENTS—EXECUTORY CONTRACTS—PERSONAL NATURE.

E.'s contract with the consolidated company was personal in its nature, and was not assignable.

6. CORPORATIONS—INSOLVENCY—EFFECT—EXECUTORY CONTRACTS.

Where a manufacturing corporation granted to licensees before the in-solvency the exclusive right to sell its articles in certain territory, the subsequent insolvency of the corporation and sale of its assets did not affect any property rights in the licensees, but, so far as the insolvent corporation's contracts remained executory and were dependent upon its continued existence, they were terminated by its insolvency.

7. SAME—REMEDIES OF CONTRACT CREDITORS—DISTRIBUTION OF ASSETS.

Where a corporation granted plaintiff the right to sell its patented ar-ticles in certain territory, upon the subsequent insolvency of the cor-poration and sale of its assets, whether there was a formal decree of dissolution or not, so far as plaintiff's contract with it was executory, plaintiff's remedy was against it for breach of contract, and plaintiff would occupy the same position as any creditor of the insolvent corpora-tion, and take its pro rata share on distribution by the receiver.

8. INJUNCTION—COVENANTS—ACTIONS FOR BREACH—PARTY DEFENDANT.

The violation of a negative covenant by a vendor not to invade the ter-ritory of the vendee for the sale of articles will be enforced against the covenantor by injunction, but can only be enforced against one under ob-ligation not to violate it.

9. SAME—RESTRICTIONS ON USE OF PROPERTY—ACTION FOR BREACH—NECESSITY OF PRIVITY.

Where the owner of property so restricts its use by covenant as to con-fer upon another a property right therein, as in case of negative ease-ments, the purchaser of the property thereafter may be restrained from violating the restricted use of the property irrespective of privity of contract or estate, as the action is to restrain the invasion of property rights, and not the breach of a covenant.

10. COURTS—CONCURRENT AND CONFLICTING JURISDICTION—STATE AND FED-ERAL COURTS—MATTERS RELATING TO PATENTS.

If a case arises under a contract, and is to enforce a covenant, the fact that it also involves a question under the patent laws will not make it a case arising under the patent laws so as to give the federal courts exclu-sive jurisdiction.

11. PATENTS—SUITS—SUIT BY LICENSEE—AGAINST PATENTEE.

A suit for the infringement of a patent may be brought by the licensee of a patent against the patentee.

12. SAME—ASSIGNMENT—LIABILITIES OF ASSIGNEE.

The assignee of a patent does not, in the absence of express contract, assume any obligation to perform a contract of his assignor with a li-censee.

13. ASSIGNMENTS—CONTRACTS—PERSONAL CONTRACT—LIABILITY ON COVENANTS.

In the absence of express contract, the assignee of a personal contract is not liable on the covenants of his assignor.

14. COURTS—FEDERAL COURTS—JURISDICTION—PATENT CASES.

A corporation granted plaintiff the exclusive right to sell patented ar-ticles in certain territory, and, upon the subsequent insolvency of the cor-poration, its assets were sold by the receiver and the bid assigned to an-other company and it assigned its interest in the contracts of the insol-vent corporation to O., who agreed to perform the several covenants there-in, and the company purchasing the assets of the insolvent corporation proceeded to develop the business independent of the licensees of the in-solvent company. Held, in a suit to enjoin defendant from purchasing articles from the purchaser of the insolvent's assets, that there was no contract relation between the insolvent corporation and such purchaser, and, while the latter took title to the patents subject to the rights of li-censees, they were property rights and not contract rights, and arose un-der Rev. St. U. S. § 4898 (U. S. Comp. St. 1901, p. 3387), permitting the as-signment of patents, and hence plaintiff's rights against defendant or his vendor were patent rights, and the courts of this state cannot take juris-diction of the suit.

Appeal from Special Term, Westchester County.

Suit by the New York Phonograph Company against Solomon B. Davega to enjoin defendant from purchasing certain patented articles from another, and for an accounting. From an interlocutory judgment for plaintiff, defendant appeals. Reversed.

Argued before WOODWARD, JENKS, HOOKER, MILLER, and GAYNOR, JJ.

Edward W. Hatch (Charles L. Buckingham, on the brief), for appellant.

Samuel F. Hyman (John P. Cohalan, on the brief), for respondent.

MILLER, J. The precise relation of the parties and their rights and obligations under the different contracts involved in somewhat complicated transactions must be ascertained before attempting to deal with the questions presented by this appeal. I shall content myself with a statement of my conclusions as to the effect of said contracts, so far as such conclusions seem to be obvious, and shall eliminate all details which do not appear to have an important bearing on the questions to be decided.

Prior to June 28, 1888, Thomas A. Edison, the inventor of the phonograph, organized and on that date controlled two corporations, the Edison Phonograph Company and the Edison Phonograph Works. The former undertook to exploit his said inventions in the United States and Canada, and to it he assigned his patents and was to receive certain royalties. The latter was given the exclusive right to manufacture the patented articles. One Jesse H. Lippincott was the sole licensee of the American Graphophone Company, the owner of certain inventions, protected by letters patent, covering the graphophone. Pursuant to contract with said Edison, made June 28, 1888, said Lippincott organized the North American Phonograph Company for the purpose of uniting the control of said two inventions. Pursuant to contracts executed by all of said parties, said North American Phonograph Company undertook, and was given the exclusive right, to exploit and introduce commercially the phonograph and graphophone in the United States and Canada, and said Edison agreed to and did assign to it the stock of said Edison Phonograph Company which he owned in consideration of the payment of $500,000, which by the agreement of June 28th was to be paid as follows, viz.: $10,000 on July 13, 1888; $115,000 on September 1, 1888; $125,000 on October 1, 1888; and $250,000 on November 1, 1888. It was also provided by said agreement that the obligations of said Edison thereunder should cease in case a default in said payments should be made and continued for 10 days, or in case said North American Phonograph Company should fail or refuse to execute the contracts contemplated. Pursuant to said agreement, said Edison entered into a contract with said North American Phonograph Company under date of August 1, 1888, whereby he agreed to assign to it without further consideration any invention or improvement on the phonograph as it then existed which he might make within fifteen years, also any invention of a special phonograph or special extra, or by which the use of the phonograph could be extended, which he might with-

in said period, and said company agreed to pay a stated royalty on the articles covered by said last-mentioned inventions, to pay all expense of taking out the patents, and to allow him for experimental work $15,000 the first year, $10,000 the second year, $7,500 the third year, and $5,000 yearly for ten years thereafter. Said company entered into contracts with the Manhattan Phonograph Company and the New York Phonograph Company, the plaintiff's predecessors. For brevity, I shall consider said contracts as a single contract made with the plaintiff, and shall not discuss the so-called extension or suspension agreements or the effect of the deposit of the certificates of stock of the plaintiff's said predecessors and the notice of the plaintiff to the depository not to deliver them, but shall assume, as the plaintiff contends, that said contracts as extended continued in force. In said contracts said North American Phonograph Company was described as lessor and licensor, and the plaintiff's predecessors as lessees and licensees. In consideration of the sum of $225,000 and the delivery of $500,000 of the capital stock par value of the plaintiff's predecessors, said licensor granted to the plaintiff the exclusive right to use, exhibit, sublet, and sell in the state of New York the phonograph and its appliances until the 26th day of March, 1903, and for such further time as said licensor might be authorized to grant such rights, subject to the right of either party to terminate the contract for the reasons and in the manner therein stated, and expressly agreed not to grant similar rights or any rights for the use of the phonograph or phonographic appliances for said territory or any part thereof while said agreement remained in force. It was contemplated that said licensor would supply the patented articles for lease or sale, and the contract contained express provisions prescribing the conditions under which that should be done, and provided that, in case of a failure to supply the demand, the licensee should have the right to obtain machines to the extent of such failure through other agencies, and the right to manufacture them or to cause them to be manufactured. I do not discuss the point argued by the plaintiff that the term of said contract was not limited by the life of the patents owned or controlled by the licensor, or which it might become entitled to under its contract with Mr. Edison, as that position is obviously unsound. The parties understood, when said contract was made, that all of the patents then in force would expire before or during the year 1905, and the continuance of the contract beyond that time depended on the making of subsequent inventions by said Edison, which said licensor should become entitled to as aforesaid. On the 12th of October, 1888, the so-called confirmation agreement was made by said Edison, the Edison Phonograph Company, the Edison Phonograph Works, the North American Phonograph Company, and said Lippincott. It recited that the North American Phonograph Company desired to grant a license to the Metropolitan Phonograph Company, one of plaintiff's said predecessors, and authorized that to be done as fully and completely as if the prior agreements of the parties thereto had been performed. The payments provided for by the contract of June 28th had not all been made, and it was stated to be the intention of said confirmation agreement not to annul or impair any of the rights or benefits conferred on

said licensee by reason of the nonperformance of said agreement of June 28th, but to grant said rights as fully and completely as though said agreement had been in all respects performed, and in the same contract said North American Phonograph Company and said Lippincott agreed that they would keep and perform all agreements with said Edison, the Edison Phonograph Company, and the Edison Phonograph Works as fully and completely as if said agreement of June 28th had been in all respects performed. The plaintiff's said predecessor was not a party to said confirmation agreement; and it is obvious that its sole purpose was to enable said North American Phonograph Company to do immediately what all understood it would be able to do after all conditions precedent had been performed, and, so for as the effect or validity of said license was concerned, to waive any breach of said agreement of June 28th. By that contract Mr. Edison was estopped to allege any such breach against the validity of the license granted to the plaintiff's said predecessor, but he did not thereby become a party to said license agreement, and he was not a party to any agreement made with the plaintiff or its said predecessors.

The business contemplated by the parties to the different contracts hereinbefore referred to was not as successful as they anticipated, and in 1894 said North American Phonograph Company became insolvent, and a receiver of it was appointed by the Chancery Court of New Jersey. On the 8th day of February, 1896, the assets of said insolvent company were sold by the receiver at public auction pursuant to a decree of said court, and Mr. Edison, being the sole and highest bidder, became the purchaser, paying $50,000 for the stock of the Edison Phonograph Company and $50,000 for the other assets, which included his patents and the various contracts of said company. He assigned his bid to the National Phonograph Company, a New Jersey corporation then recently incorporated, and it assigned to a Mr. Ott its interest in said contracts under said bid. Said receiver transferred to said National Phonograph Company the stock of the Edison Phonograph Company and the patents owned by the insolvent, and assigned said contracts to said Ott, who agreed to perform the several stipulations, covenants, and agreements therein made by said North American Phonograph Company. The said National Phonograph Company proceeded to develop the business independently of the licensees of said North American Phonograph Company, and to sell the patented articles through other parties with whom it made so-called jobbers' or dealers' agreements. The defendant is purchasing said articles from said company at Orange, N. J., and selling them in the state of New York. This action was begun June 19, 1906, to enjoin the defendant from so doing, and for an accounting.

The trial court found that none of the inventions of Mr. Edison other than for factory processes made prior to the sale of the assets of the North American Phonograph Company, and used by the National Phonograph Company in the manufacture of phonographs, records, or supplies, were in force at the time of the commencement of this action, all either having expired by reason of expiration of the

term of the patent or by reason of shorter term foreign patents, or having been discarded, but that an invention was made by Mr. Edison for which a patent was applied for on the 1st day of August, 1903, the last day of the 15 years subsequent to August 1, 1888, and that letters patent were issued thereon on August 9, 1903. That finding is the basis for the conclusion of law that the plaintiff is entitled to an injunction running until August 9, 1921, and for the judgment appealed from.

The respondent's position is that the National Phonograph Company is the successor of the North American Phonograph Company; but that position is untenable. N. Y. Bank Note Co. v. Hamilton B. N. Co., 180 N. Y. 280, 73 N. E. 48. The National Company purchased through Mr. Edison the assets of the North American Company at receiver's sale pursuant to a judicial decree. There was nothing in that decree which required the purchaser to assume the obligations of the insolvent company, and the purchaser at a judicial sale of the assets of an insolvent corporation does not assume the latter's obligations. Hoard v. Chesapeake & Ohio Railway, 123 U. S. 222, 8 Sup. Ct. 74, 31 L. Ed. 130; Sullivan v. Portland, etc., R. R. Co., 94 U. S. 806, 24 L. Ed. 324. There is a finding "that such acts [referring to acts set forth in previous findings] were done pursuant to a scheme or plan and as an expedient and device to unlawfully invade the said exclusive territory of this plaintiff." But, so far as that may refer to the appointment of a receiver of the North American Phonograph Company, the sale of its assets, and the purchase thereof by the National Phonograph Company, there is no evidence to support it. It is unquestioned that the North American Phonograph Company was insolvent, a receivership was necessary, and Mr. Edison or a company organized by him had as much right to purchase the assets as anybody had. In fact, his purchase was probably fortunate for the creditors. He may have intended that the new company organized by him should proceed to develop the business independently of the lessees or licensees of the North American Phonograph Company in whose hands it had proved a failure, but that has nothing to do with the rights acquired or the obligations assumed by the National Phonograph Company. There was no privity of contract between it and the plaintiff, or between Mr. Edison and the plaintiff. Neither it nor Mr. Edison could invade the plaintiff's rights; but we must first ascertain what those rights were. Obviously they must be determined as of the date of the receiver's sale. At that time the plaintiff had the exclusive right to use, exhibit, sublet, or sell in the state of New York the articles covered by the patents owned by the insolvent company or controlled by it through its ownership of the Edison Phonograph Company, and, if necessary, to manufacture for that purpose. It could only become entitled to similar rights in the subsequent inventions of Mr. Edison, in case its licensor, the said North American Phonograph Company, became entitled to them under its contract with him; but the provisions of such contract as to future inventions were wholly executory. He was not obliged to assign his rights in such inventions, unless it performed

its part of the agreement; i. e., paid the expense of taking out the patents, and allowed him the stipulated sum for experimental work. When it became incapacitated to perform by reason of insolvency and the sale of its assets, his agreement so far as it was executory ceased; and there is no pretense that it or any one claiming under it has performed. Moreover, under its contract with him, it was to exploit his inventions and to purchase the patented articles from the Edison Phonograph Works, a corporation which he controlled, and, when it ceased to be able to do that, his obligation to make inventions for the benefit of it or its licensees with whom he had no contract relations ceased. Its contract with him was peculiarly personal. He was vitally interested in the manner in which it performed, and said contract was not in terms or in its nature assignable. N. Y. Bank Note Co. v. Hamilton B. N. Co., supra. By purchasing the assets of the insolvent company and assigning his bid, he incurred no obligation except to pay the purchase price. Any property rights in the licensees of the insolvent company arising under its contracts were not affected by its insolvency and the sale of its assets (People v. National Trust Co., 82 N. Y. 283); but, so far as such contracts remained executory and were dependent upon the continued existence of the corporation, they were terminatd by its dissolution (People v. Globe Mut. Life Ins. Co., 91 N. Y. 174). I speak of it as a dissolution, because that was the practical effect of the sale by the receiver of all its assets. It does not appear that there was a formal decree dissolving the corporation; but whether the corporation was formally dissolved or not, so far as its contract with the plaintiff remained executory, the remedy of the latter for a breach was against it; and, if any part of such executory provisions survived its insolvency and the sale of its assets, the plaintiff would have to stand the same as any creditor, and, upon proving its damage, take its pro rata share on a distribution by the receiver. It may be that a new contract resulted from the agreement of said Ott, which the plaintiff could enforce against him if it has ever put itself in a position to do so, but we have no such question, and upon the proof before us the National Phonograph Company, the defendant's vendor, is not concerned with it. I am not saying that Mr. Edison could wreck the North American Phonograph Company for the purpose of acquiring its assets and destroying the value of the plaintiff's contract without being answerable in some form of action, for I believe the law is adequate to deal with every wrong, but, while much is said by the learned counsel for the respondent on that subject, there is no proof whatever in the record to warrant it. The rights of the licensees of the said insolvent company in the inventions of Mr. Edison made subsequent to the receiver's sale have not been passed on in the many decisions of the federal courts called to our attention save in the cases of N. Y. Phonograph Co. v. Edison and Others (C. C.) 136 Fed. 600, and New York Phonograph Co. v. National Phonograph Co., 144 Fed. 404, 75 C. C. A. 382. As I understand the judgment in that case, as elucidated by the subsequent opinion of Judge Hazel (163 Fed. 534) rendered on the motion for an at-

tachment for violating the decree, it was limited to the inventions of Mr. Edison made prior to the receiver's sale. This conclusion requires a reversal of the judgment, but we should not reverse without disposing of the question of jurisdiction.

On that question we are not concluded by the decisions of the federal courts. See New England Phonograph Co. v. Edison (C. C.) 110 Fed. 26; New York Phonograph Co. v. Nat. Phonograph Co. (C. C.) 112 Fed. 822; Rahley v. Columbia Phonograph Co., 122 Fed. 623, 58 C. C. A. 639; Whitson v. Columbia Phonograph Co., 18 App. D. C. 565; New York Phonograph Co. v. Edison (C. C.) 136 Fed. 600; New York Phonograph Co. v. Nat. Phonograph Co., 144 Fed. 404, 75 C. C. A. 382; and the other decisions called to our attention. All of those decisions, save the last, were made on demurrer or on application for an injunction pendente lite, and the question was whether the bill was good, or whether a prima facie case was made appealing to the discretion of the court. Those decisions were made on the theory that contract, not patent, rights were involved; that the North American Phonograph Company impliedly covenanted with the plaintiff not to invade the territory in which the latter was granted exclusive rights; and that the National Phonograph Company was the successor of the said North American Phonograph Company. Those conclusions may have been warranted by the allegations of the bill or by the prima facie case made, but, as already shown upon the record before us, said National Phonograph Company was not the successor of the insolvent. Judge Hazel in the case of this plaintiff against the National Phonograph Company (supra), followed said decisions, but, as we have seen, he held that the plaintiff's rights were to be determined as of the date of the receiver's sale, and it does not seem that it was material to that decision whether said rights were regarded as contract or patent rights. Assuming that that decision is binding on the defendant in this case, as the respondent seems to contend, it only concludes him upon the point actually decided; i. e., that it was unlawful for the National Phonograph Company, his vendor, to trespass upon the exclusive rights of the plaintiff under the patents owned or controlled by the said North American Phonograph Company at the time of the receiver's sale—a proposition that does not need to be supported by the rule of res adjudicata.

The jurisdiction of this court is invoked on the ground that the suit is to enjoin the violation of a negative covenant, express or implied; and I shall assume for the purpose of the discussion that the North American Phonograph Company was under covenant with the plaintiff not to invade the latter's territory. Undoubtedly a suit to restrain the violation of such a covenant may be maintained against the covenantor or any one conspiring with said covenantor to violate it; but neither the defendant, his vendor, nor Mr. Edison is under any covenant with the plaintiff, and I am unable to perceive how a suit strictly to enjoin the breach of a covenant can be maintained unless some one bound to discharge the covenant participate in its violation. Certainly none of the cases relied upon support any such

proposition. In N. Y. Bank Note Co. v. Hamilton B. N. Co., supra, and Standard Fashion Co. v. Siegel-Cooper Co., 157 N. Y. 60, 51 N. E. 408, 43 L. R. A. 854, 68 Am. St. Rep. 749, the covenantor was one of the defendants; and Murphy v. Christian Press, etc., Co., 38 App. Div. 426, 56 N. Y. Supp. 597, Lewis v. Gollner, 129 N. Y. 227, 29 N. E. 81, 26 Am. St. Rep. 516, and similar cases, were not suits to restrain the breach of covenants, but the violation of property rights. Those cases were decided upon the theory that the owner of property, whether real or personal, may by contract so restrict its use as to confer upon another a species of property interest in it, and that a purchaser with notice gets only the restricted title. Such purchaser may be sued to restrain the particular use of the property, not because he has covenanted not to so use it, but because he cannot trespass upon the special property rights which he knew another had in the property when he bought it. The most common application of the principle is in suits to restrain the violation of negative easements, and it is familiar law that in such cases privity of contract or estate between the parties is unnecessary; the action being one to restrain the invasion of property rights, not the breach of a covenant. Lewis v. Gollner, supra, was a suit to restrain the violation of a negative easement which attached to the land when purchased by one of the defendants, and was not affected by a conveyance to his wife, who took with notice. Murphy v. Christian Press, etc., Co., supra, was a suit involving personal property, but was decided by analogy with cases involving negative easements in real estate. Apollinaris Co. v. Scherer (C. C.) 27 Fed. 18, is cited to sustain the respondent's contention, but it seems to me to be a plain authority the other way. In that case an injunction was denied because there was no privity between the defendant and the plaintiff's covenantor. A trade-mark was incidentally involved in that case, but it was held that it was not being infringed because the genuine article was being sold. Judge Wallace in that case pointed out how the plaintiff might have succeeded if territorial rights under a patent had been involved, but held that, as the plaintiff's rights rested purely in covenant, it could not succeed, thus making the distinction between a contract case and one arising under the patent laws of the United States. If the case arises under a contract and is to enforce a covenant, it does not matter that it may involve a question under the patent laws. If it arises under the patent laws, it does not matter that it may also involve the construction of a contract. The distinction between a case and a question arising under a contract or the patent laws is made plain in Littlefield v. Perry, 88 U. S. 205, 22 L. Ed. 577; Excelsior Wooden Pipe Co. v. Pacific Bridge Co., 185 U. S. 282, 22 Sup. Ct. 681, 46 L. Ed. 910. We do not need to determine now what rights the plaintiff has under the patent laws, or whether treated solely as an infringement suit the action can be maintained against the defendant (see Keeler v. Standard Folding Bed Co., 157 U. S. 659, 15 Sup. Ct. 738, 39 L. Ed. 848), for, as already shown, whatever rights the plaintiff has arise under the patent laws, unless there is some contract relation between the plaintiff and the defendant or his vendor. This depends on the effect of the purchase by the plaintiff's vendor of the assets of the North American Phonograph Company. If that resulted in a

novation, so as to impose upon the purchaser the obligations of the
insolvent under the contract with the plaintiff, there is a contract rela-
tion between the purchaser and the plaintiff. If it be the law that the
purchaser at a receiver's sale of the assets of an insolvent corporation
assumes its obligations even under executory contracts, no responsible
person could safely bid at such a sale; but, as already shown, that is
not the law. The contracts in question were sold with the other as-
sets. The purchaser assumed no liability except to pay the purchase
price, for the decree under which the sale was had imposed no other
liability. The assignee of the bid, the National Phonograph Company,
was in the same situation, and likewise its assignee, the said Ott. The
purchaser bought rights, not liabilities. Of course, he could not avail
himself of rights without discharging reciprocal obligations, but he
was not obliged to avail himself of such rights. He could have discon-
tinued the use of the patents purchased without subjecting himself to
liability to any one for breach of contract. Of course, he took title to
the patents subject to the rights of licensees, but as to him those rights
were property, not contract, rights. They resulted from a contract,
to be sure, but they arose under the patent laws of the United States.
Section 4898 of the Revised Statutes of the United States (U. S.
Comp. St. 1901, p. 3387) provides:

"Assignments of Patents. Every patent or any interest therein shall be
assignable in law by an instrument in writing, and the patentee or his as-
signs or legal representatives may in like manner grant and convey an ex-
clusive right under his patent to the whole or any specified part of the
United States."

The licensee has by assignment certain of the rights granted to the
patentee by the government, as under the law the rights of the patentee
may be subdivided and granted to different grantees. A suit is none
the less an infringement suit because it does not involve the validity
of a patent. Such a suit may be brought by a licensee against the
patentee. Littlefield v. Perry, supra; Excelsior Wooden Pipe Co. v.
Pacific Bridge Co., supra. In it rights arising under the patent laws
are asserted, and the construction of said laws as well as the construc-
tion, if not the validity, of the patent, is involved. Such were the rights
which the plaintiff's vendor had to respect. "The assignee of a patent
does not, in the absence of express contract, assume any obligation to
perform the contract of his assignor with the licensee." Bradford
Belting Co. v. Kisinger-Ison Co., 113 Fed. 811, 51 C. C. A. 483. As
to the contracts which were assigned to said Ott by the receiver pur-
suant to the transfer to him of the interest of the National Phono-
graph Company therein under Mr. Edison's bid, no different question
is presented. Either Mr. Edison, his assignee, the said National Phon-
ograph Company, or its assignee, Ott, could have taken an assignment
of those contracts without assuming any obligation under them. There
are many decisions to the effect, and none that my research has dis-
closed to the contrary, that, in the absence of express agreement, the
assignee of a personal contract is not liable on the covenants of his
assignor. Adams v. Wadhams, 40 Barb. 225; Heinze v. Buckingham,
42 N. Y. St. Rep. 427, 17 N. Y. Supp. 12; Suydam v. Dunton, 84

Hun, 506, 32 N. Y. Supp. 333; Comstock v. Hitt, 37 Ill. 543; Smith v. Kellogg, 46 Vt. 560. In other words, the man who buys a bargain is not obliged to take the benefit of it. The suit by the other party for a breach must be brought against the assignor, the contracting party, not against the assignee, unless he agrees to be bound. Much has been said about the transfer to said Ott, an alleged dummy, but the motives of that transaction are immaterial. By transferring a right the National Phonograph Company assumed no obligation which the retention of the right would not have imposed. So far as the contracts were executory, said Ott got the right to do nothing with them, or to assume the obligations of the insolvent company, as the contracts were in terms assignable on condition that the assignee assumed said obligations. Now, Ott saw fit to assume those obligations, but he did that on his own account, and not on behalf of the National Phonograph Company, as there is not a scintilla of proof in the record warranting the conclusion that the National Phonograph Company was in any way bound by Ott's said agreement. We are not concerned in this suit with the contract relations that may exist between the plaintiff and said Ott. The conclusion seems inevitable that whatever rights the plaintiff has as against the defendant or his vendor are patent, not contract, rights. If so, any suit to enforce those rights arises under the patent laws of the United States, and the courts of this state cannot take jurisdiction of it.

Interlocutory judgment reversed and new trial granted, costs to abide the final award of costs. All concur.