Argued February 21, affirmed April 3, rehearing denied June 12, 1917.

# CORVALLIS & ALSEA RIVER R. CO. *v.* PORTLAND E. & E. RY. CO.

## (163 Pac. 1173.)

**Railroads—Sale—Assignment of Contract.**

1. Where a railroad company which had made a contract with a lumber company to construct an extension of a spur to a certain point to enable the lumber company to transport its logs, before the time for the completion of such extension, sold and conveyed to another railroad company its railroad with all other property real and personal, contracts, rights, etc., and the purchaser accepted the conveyance and commenced the construction of the extension, that conveyance, when construed in the light of the situation of the parties which prevented the vendor from performing the contract and conferred the benefits thereof on the purchaser, assigned the contract for the extension to the purchaser, and imposed on it the obligation to perform it.

**Evidence — Parol Evidence — Construction of Deed — Situation of Parties.**

2. To construe a deed, the court should be put in the position of the parties, and if the deed is ambiguous, it may be shown by parol how the parties understood it, and dealt with the subject thereof.

[As to parol evidence to explain words used in writing, see note in 122 Am. St. Rep. 546.]

**Contracts—Construction—Intention of Parties—Entire Instruments.**

3. In construing contracts the object is to arrive at the intention of the parties as expressed in the entire instrument.

**Assignments—Contracts—Personal Relation—Consent of Other Party.**

4. A contract by a railroad to construct a spur for the use of a lumber company is one which necessarily must be performed by a large number of men, and in which, therefore, there is no element of personal relationship, so that the contract may be assigned to a purchaser of the railroad either with or without the consent of the lumber company.

**Assignments—Rights of Parties—Assignment.**

5. A contract is generally assignable unless assignment is forbidden by public policy or by the contract itself, or unless its provisions show that one of the parties reposed a personal confidence in the other which he would not have been willing to repose in another person.

**Railroads—Sale—Liability of Purchaser—Assigned Contract.**

6. Where a railroad company assigned to a purchaser of its road a contract for the construction of a spur for a lumber company, which the purchaser was bound to perform, the assignor can recover from the purchaser the damages it has sustained by the latter's failure to perform the contract.

Assignments—Liability of Assignee.

7.   The assignment of a contract operates not merely as an assignment of the moneys thereafter to be earned, but of the whole contract with its obligations and burdens.

Assignments—Liability of Assignor.

8.   The assignment of a contract does not discharge the assignor from his original undertaking.

Judgment—Conclusiveness—Assignor and Assignee.

9.   A judgment for breach of a contract to construct a railroad spur which contract had been assigned to the purchaser of the railroad is conclusive against the purchaser as to the validity of the contract, its breach, and the damages suffered by the other party.

From Multnomah: CALVIN U. GANTENBEIN, Judge.

Action by the Corvallis & Alsea River Railroad Company against the Portland, Eugene & Eastern Railway Company. Judgment for the plaintiff, and defendant appeals. Affirmed.

In Banc.   Statement by MR. JUSTICE BEAN.

This is an action brought by the plaintiff against the defendant to recover damages for the breach of a contract.   The cause was tried to the court and jury and a verdict rendered in favor of plaintiff for $19,809, and $500 attorney's fees.   From a resulting judgment defendant appeals.

Plaintiff alleges in effect that on April 17, 1911, and for some time prior thereto, it owned and operated a railroad line from Corvallis to Monroe and also owned certain railway equipment, rolling stock, real and personal property, rights of way, contracts and franchises; that among the contracts was one made during the year 1909 between the plaintiff and the Corvallis Lumber Manufacturing Company, hereafter to be designated as the Lumber Company, by the terms of which plaintiff agreed to construct a branch line from its main track on or before May 15, 1910, extending into section 16, and also to extend that spur to a point

within the boundary lines of the northwest quarter of section 20 on or before June 1, 1911, the Lumber Company to furnish logs from said timber for transportation to Corvallis over the branch line when constructed; that about March 1, 1911, by agreement between the plaintiff and the Lumber Company, the time for the construction of the branch line was extended until March 1, 1912; and that the plaintiff constructed the first portion of this line but never completed the remainder.

Plaintiff further avers that prior to April 17, 1911, it had entered into negotiations with the defendant company for the sale to the latter of its railway lines, equipment, etc., during which transactions plaintiff particularly called attention to its contract with the Lumber Company and to the modification thereof; that on April 17, 1911, a contract was entered into between the plaintiff and defendant whereby the former agreed to sell and the latter to purchase all plaintiff's railway lines, equipment, rolling stock, rights of way, contracts and franchises; that thereafter in June, 1911, plaintiff conveyed its said properties to defendant and the latter accepted the same and entered into possession thereof.

Plaintiff also asserts that it was the intention of the parties in making the conveyance of the railway property that the contract with the Lumber Company as modified should be transferred to the defendant and that the latter should have the benefit of it and assume the obligations incident thereto; but that the defendant refused to perform the contract with the Lumber Company or to construct the branch line. Plaintiff claims that the Lumber Company at the time knew of the negotiations looking to the sale to the defendant of plaintiff's entire railway property and that it (the Lumber Company) was at all times willing for the

defendant to purchase plaintiff's contract with it, carry out the terms thereof, and build the branch line, but that it never released the plaintiff from its obligation to build that line; that by reason of the defendant's failure to comply with this contract and construct a branch line the Lumber Company instituted an action against the plaintiff in the Circuit Court of the State of Oregon for Benton County; and that such proceedings were had therein that a judgment was rendered against the plaintiff and in favor of the Lumber Company for the sum of $18,000, with interest at 6 per cent from the date of release (December 1, 1913) and costs and disbursements in the amount of $124. In the trial of this action it was also stipulated that $500 was a reasonable expenditure on the part of plaintiff in defending the case brought against it by the Lumber Company. By its answer the defendant admitted its corporate identity but denied all the remainder of the matters alleged in the complaint. Afterwards, at the trial of the cause defendant amended its answer by setting forth separately and affirmatively that on July 20, 1911, the plaintiff executed and delivered to it a certain warranty deed conveying to it, among other things, the then constructed portion of the railroad leading towards the Lumber Company's timber; that the deed contained other covenants of warranty whereby plaintiff covenanted that it would "warrant and forever defend the said granted premises and every part and parcel thereof against all claims and demands of any person or persons whomsoever"; that by reason of these covenants of warranty plaintiff was estopped from alleging, asserting, proving or making any recovery upon the contract alleged in the complaint to have been in existence between the plaintiff and the Lumber Company.

The record discloses substantially the following facts: During the year 1909 the Lumber Company which was then erecting a sawmill at Corvallis purchased a large amount of standing timber in sections 16 and 20, for the purpose of supplying its mill with sawlogs. Previous to such purchase there was a verbal agreement between it and the plaintiff to the effect that if it would purchase the timber and ship the logs therefrom over plaintiff's railroad, the latter would construct the necessary branch line to reach the timber, there being no other means of transporting it. Before the Lumber Company completed such purchase it insisted on a writing from plaintiff embodying the verbal agreement binding the latter to construct the branch line. Such an instrument was executed by the plaintiff on November 4, 1909. It is in the form of a bond executed under seal and binds the plaintiff to build a branch line into section 16 on or before May 15, 1910, and to a point within the boundary lines of the northwest quarter of section 20 on or before June 1, 1911, and to have the same in condition for the transportation of logs from each parcel of land within the time specified. The bond recited in effect that the condition of the obligation was that the Lumber Company was at present engaged in constructing and equipping a sawmill at the City of Corvallis and contemplated the purchase of certain timber lands in Benton County in sections 16 and 20 and that it desired plaintiff to construct a railroad or branch or spur line of railroad to its sawmill at Corvallis. It further recited, in substance, that plaintiff had before October 1, 1909, agreed with the Lumber Company that if it would purchase said timber it would construct this line of railroad into sections 16 and 20 along a certain route described in the bond and would construct and extend

the line as therein indicated.   After the execution and delivery of this bond to the Lumber Company it purchased the timber on sections 16 and 20, and in performance of its part of the contract the plaintiff built the branch line into section 16 and the Lumber Company cut a large part of the timber therefrom and shipped the same to Corvallis over plaintiff's railroad. The bond was introduced in evidence.   The agreement to extend the time for the building of the branch line into section 20 is as follows:

"This memoranda agreement between Corvallis Lumber Manufacturing Company, and Corvallis & Alsea River Railroad Company, Witnesseth:

"Whereas, heretofore and on or about October 1, 1909, Stephen Carver, the general manager of the above railroad company, entered into an agreement with the above named Manufacturing Company that the said railroad company would construct its line of railroad or branch or spur lines thereof across certain property purchased by the said Manufacturing Company from one J. L. Hartman and wife, and that they would extend the said line through the center of Section 16 of said property on or before May 15, 1910, and a further extension to a point within the boundary lines of the northwest quarter of said Section 20 on or before June 1st, 1911; and

"Whereas, said Manufacturing Company is not in the immediate need of said second extension, and will not need the same prior to March 1, 1912,

"Now, therefore, in consideration of the premises, the said Manufacturing Company does hereby extend the period for the second extension from June 1, 1911, to March 1, 1912.

"Provided, however, that all other conditions, covenants and agreements mentioned in said original contract, to which this extension is to become attached and made a part thereof, shall remain in full force and effect, unaltered and unmodified, save and except that

84 Or.—34

the time within which the second extension of the spur shall be completed shall be March 1, 1912, in lieu of June 1, 1911.

"In witness whereof, the parties hereto have hereunto set their hands and seals this 1st day of March, 1911."

The bond and agreement of modification thereof, exhibits "C" and "D" herein, were introduced in evidence in the Circuit Court in the Benton County Case.

After negotiations had been pending for some time, on April 17, 1911, the plaintiff and defendant entered into a contract for the sale of the former's railroad, about thirty-one miles in length, with two branches known as the Glenbrook and the Bellfontaine, together with the rolling stock, equipment, machinery, tools and supplies and "all other property, real and personal, *contracts,* rights, assets, and franchises of whatever description and wherever situated * * except its franchise to be a corporation."

The consideration was $410,000, $25,000 of which was to be paid in cash and the balance in deferred payments evidenced by notes of certain denominations to be secured by mortgage bonds pledged therefor as security which were to be placed in the hands of a trustee for that purpose. The contract provided for an issue of bonds by the purchaser in the principal sum of not less than $880,000 and not more than $1,200,000. It also provided that:

"Provision shall be made so that bonds may be issued for extensions, additions, betterments or improvements to such amount for each additional mile of single track railroad as the purchaser may elect, but not exceeding $25,000 for each such mile."

It was stipulated therein that the Corvallis & Alsea River Railroad Company should pay all claims against

the road up to the date of the contract, April 17, 1911. On July 20, 1911, a deed was executed by plaintiff conveying to defendant the property described in the contract. There were several details pertaining to the right of way, etc., which were not completed on the part of the plaintiff until about October of that year. About October 17th a copy of the bond with the Lumber Company was delivered to defendant. When the sale was made, according to the agreement with the Lumber Company there remained to be constructed an extension of about three fourths of a mile in a direct line, but on account of the contour of the land a construction of twice that distance or more was necessitated to reach the timber in section 20. Plaintiff asserts that the defendant accepted the contract to construct the extension and assumed and agreed to perform it. It appears that the Portland, Eugene & Eastern Railway Company, the defendant, did commence the performance of the contract by assembling men and materials on the right of way, making surveys, erecting bunk-houses, and doing some work clearing the right of way. It also constructed or changed a siding and hauled some of the timber for the Lumber Company from section 16. Thereafter it abandoned the work and refused to construct the line into section 20. During the negotiations for the sale of the road the officer of the plaintiff showed Mr. O'Connor, who was representing the defendant in the transactions, where the railroad extension was to be built and where they expected to build it to carry out the contract with the Lumber Company. The latter company was unsuccessful in attempting to get the defendant to complete the line and brought an action against the plaintiff in the Circuit Court of Benton County for damages for failure to construct the line into section 20, claim-

ing that while it was willing for the defendant to build the line it had never released plaintiff from its contract to build the same. Immediately upon being sued plaintiff gave defendant notice to defend, and informed and advised it:

"That in the event the Corvallis & Alsea River Railway Company suffers any damage by virtue of this suit we shall hold the Portland, Eugene & Eastern Railway Company responsible."

The notice was ignored by the defendant. Plaintiff engaged reputable counsel and defended the suit in good faith to the best of its ability with the result that the Lumber Company recovered a judgment against it for $18,124 for failure to build the branch line into section 20. Plaintiff paid the judgment and thereafter instituted this action. The record of the judgment in the Benton County Case was introduced in evidence.

AFFIRMED. REHEARING DENIED.

For appellant there was a brief over the names of *Mr. Ralph E. Moody, Mr. William D. Fenton, Mr. John F. Reilly* and *Mr. Paul P. Farrens,* with an oral argument by *Mr. Moody.*

For respondent there was a brief over the names of *Mr. John M. Pipes, Mr. Martin L. Pipes* and *Mr. A. C. Woodcock,* with oral arguments by *Messrs. John M. & Martin L. Pipes.*

MR. JUSTICE BEAN delivered the opinion of the court.

At appropriate times counsel for defendant raised the questions involved in this case in several different ways, to wit: By a demurrer to the sufficiency of the complaint; by an objection to the introduction of any evidence on account of the insufficiency of the complaint;

by a motion for a nonsuit; by a motion for a directed verdict in favor of defendant; and also by exceptions to instructions given by the trial court to the jury.

The basis of the contention of counsel for defendant that the plaintiff cannot recover in this action is plainly stated in their brief as follows:

"In order to obligate the assignee to carry out the covenants of the assignor, there must be a special agreement to that effect, there must be a novation requiring a mutual agreement whereby the assignee was accepted by the original contractor or vendor and the contractor released from obligation."

Defendant contends that the contract to build the extension was not assignable so as to obligate it to construct the same.

1. Taking the contract of sale and the deed in their entirely this much is plain, that the extension of the railroad into section 20 was agreed to be built by a certain date. The question is: Who should do this? Somebody must or suffer the consequences. The road was sold and conveyed by the Corvallis & Alsea River Railroad Company to the Portland, Eugene & Eastern Railway Company. Under the contract of sale and the deed of conveyance it is clear that the grantor would have no right to exercise any authority in the matter nor to interfere with the right of way, nor obtain any benefit therefrom. Keeping in mind the restriction in the contract for the sale as to the issuance of bonds for the extensions and betterments it would appear that the Portland, Eugene & Eastern Railway Company not only obtained the right, but assumed the responsibility to construct such an extension of the spur. It stipulated in order to preserve the security of plaintiff not to issue bonds for any such extension in excess of $25,000 per mile.

2. It was the defendant's argument in the lower court that no greater obligation nor any less can be imposed upon the purchaser of the road than the writing itself contains. In order to construe the writings the court should be put in the position of the parties. Where a deed is ambiguous it may be shown by parol how the parties understood it and dealt with the substance thereof, in aid of its interpretation: *Harlow* v. *Oregonian Pub. Co.,* 45 Or. 520 (78 Pac. 737). Looking at the written memoranda alone, should the vendor stand sponsor for the future conduct of operations and construct or pay for not constructing an extension agreed to be built before the sale, without any recourse to the vendee, and thus reduce the compensation to be paid for the road? We think not. Does the contract in question stand upon any different foundation than uncompleted outstanding contracts for light, water and fuel to be furnished along the line and paid for, which we will suppose were in existence at the time of the sale? It seems to us that it does not. When the defendant bought and took an assignment of the contract which had been made between plaintiff and the Lumber Company for the construction of the extension of the branch spur and thereby acquired the right to receive the benefits thereof by obtaining materials for transportation, and the privilege of constructing its railroad over the lands of the Lumber Company and increasing its line, and accepted and partially performed the stipulation, it assumed the liability of bearing the burden of the contract, together with the acquisition of the right of appropriating the benefits. It took the contract *cum onere: Union Pac. R. Co.* v. *Douglas Co. Bank,* 42 Neb. 469 (60 N. W. 886); *Smith* v. *Rogers,* 14 Ind. 224.

In a sale of a railroad it would be an utter impossibility to have all collateral contracts and transactions completed *in toto;* and it was meet and proper for the contracting parties, as they did in this instance, to stipulate that the vendor should liquidate all indebtedness incurred up to the time of the conveyance, and make provision for funds for future operations. Such a stipulation precludes the idea that the seller would be ultimately bound to bear the expenses of the construction of an extension or the making of betterments or running expenses after that time. All such later responsibilities were certainly at least impliedly assumed by the Portland, Eugene & Eastern, the vendee, by the contract of purchase which it executed and the deed which it accepted.

3. In construing contracts it is a recognized principle that the object of all rules of interpretation is to arrive at the intention of the parties as expressed in their contract, and that in written contracts which permit of construction, this intent is to be derived from an examination of the entire instruments.

"The problem is not what the separate parts mean, but what the contract means when considered as a whole": 2 Page on Contracts, § 1112.

It was said by Mr. Justice Woods in *Merriam* v. *United States,* 107 U. S. 441 (27 L. Ed. 533, 2 Sup. Ct. Rep. 540):

"It is a fundamental rule that, in the construction of contracts, the courts may look not only to the language employed, but to the subject matter and surrounding circumstances, and may avail themselves of the same right which the parties possessed when the contract was made."

In Beach on Modern Law of Contracts, vol. 1, § 702, the author says:

"To ascertain the intention, regard must be had to the nature of the instrument itself, the condition of the parties executing it, and the objects which they had in view. The words employed, if capable of more than one meaning, are to be given that meaning which it is apparent the parties intended them to have."

The contract for the extension was sold and assigned by inserting the word "contracts" in the agreement of sale and with like brevity in the deed of conveyance. We think, however, that the construction contract with the Lumber Company came within the descriptive terms of the sale contract and the deed and was assigned to the Portland, Eugene & Eastern Railway Company, the vendee (*Sommer* v. *Island Mercantile Co.,* 24 Or. 216 (33 Pac. 559); *Reinstein* v. *Roberts,* 34 Or. 92 (55 Pac. 90, 75 Am. St. Rep. 564); *La Vie* v. *Tooze,* 43 Or. 595 (74 Pac. 210), and that the rights and duties of the parties in carrying out the same are fairly shown by their agreement when considered in the light of the attending facts and circumstances: *Atl. & N. C. R. Co.* v. *Atl. & N. C. Co.,* 147 N. C. 368 (61 S. E. 185, 125 Am. St. Rep. 550, 15 Ann. Cas. 363, 23 L. R. A. (N. S.) 228); *Himrod Furnace Co.* v. *The C. & M. R. Co.,* 22 Ohio St. 451; *American Bond. & Trust Co.* v. *Baltimore & O. S. W. R. Co.,* 124 Fed. 866, 875 (60 C. C. A. 52).

4. In the present case the contract involves no peculiar or special skill or personal element so far as the Lumber Company is concerned. A temporary road sufficient to transport the timber would fulfill the requirements of the contract. It appears that the Lumber Company assented to the agreement. We think the contract between the plaintiff and the Lumber Company was assignable.

The general rule is that an executory contract which is not necessarily personal in its character and which

can consistently with the rights and interests of the adverse party be sufficiently executed by the assignee is assignable, where there is an absence of an agreement in the contract in regard to the assignability: *N. Y. Bank Note Co.* v. *Hamilton Bank Note Co.,* 180 N. Y. 280, 291 (73 N. E. 48) ; *Smith* v. *Craig,* 211 N. Y. 456, 461; *Quinn* v. *Whitney,* 204 N. Y. 363, 369 (97 N. E. 724) ; *Himrod Furnace Co.* v. *C. & M. R. Co.,* 22 Ohio St. 451; *Frese* v. *Moore,* 1 Cal. App. 587 (82 Pac. 542). In its very nature the contract in question was one which would have to be performed by many men. It is for that reason assignable as declared by this court in *Browne & Co.* v. *John P. Sharkey Co.,* 58 Or. 480, at page 483 (115 Pac. 156, at page 157), wherein Mr. Justice McBRIDE said:

"The case of *Campbell* v. *Sumner County,* 64 Kan. 376 (67 Pac. 866), cited by appellant, wherein it is held that a contract to do county printing is one made in contemplation of the special skill of the contractor, does not meet with our approval. Contracts to print books, with or without illustrations, are such as must in their very nature be performed by many hands, and, unless there is something in the circumstances to indicate the contrary the general rule should be that the contract is for a certain quality of work, and not that a particular person shall perform it. The case of *Carter* v. *State,* 8 S. D. 153 (65 N. W. 422), holds exactly the reverse of the Kansas case above cited, and we think with better reason."

In *Devlin* v. *Mayor,* 63 N. Y. 8, we find at page 17, the following:

"The assignability of a contract must depend upon the nature of the contract and the character of the obligations assumed rather than the supposed intent of the parties, except as that intent is expressed in the agreement."

In the case at bar the original contract was made between two different corporations. It necessarily follows that the work was to be done through agents and servants and there could be no personal element involved. The Lumber Company was perfectly willing that the branch line of railroad should be constructed by plaintiff or any contractor or assignee with whom plaintiff might deal to that end. In 2 R. C. L., pp. 601, 602, it is stated:

"As a general rule it may be stated that building and construction contracts, which of necessity usually require the labor and attention of a number of men, are assignable, unless it appears that the contract was made because of the knowledge, experience or pecuniary ability of the contractor, or that for some reason he was especially fitted to carry it out, or that it involved some feature of a personal nature."

In 21 L. R. A. (N. S.), 359, note, we find the following:

"As applied to building and construction contracts, which of necessity usually require the labor and attention of a number of men, it is generally held that such contracts do not come within the foregoing rule (involving personal relation) and are therefore assignable, unless it appears that the contract was made because of the knowledge, experience, etc., of the contractor."

5. The usual test laid down in the cases is that a contract is generally assignable unless forbidden by public policy, or by the contract itself, or when its provisions are such as to show that one of the parties reposed a personal confidence in the other which he would not have been willing to repose in any other person. It is not pleaded in the present case that the Lumber Company would not have confided to any other company the duty of building the branch line. The work

to be done by both parties was common ordinary work necessarily to be performed by many men. In *New England Iron Co.* v. *Gilbert Elevated R. Co.,* 91 N. Y. 166, the following appears in the opinion:

"The matter of the contract involved no personal relation or confidence between the parties, or exercise of personal skill or science, for the contractor was a corporation and its work was necessarily to be done through agents or servants. There are no words restraining its assignment, and the mere fact that the persons representing the contractor are assignees, and not merely agents or servants, will not operate as a rescission of or constitute a cause for terminating the contract."

6. As between the Portland, Eugene & Eastern Ry. Company, the assignee, and the Corvallis & Alsea River Railroad Company, the assignor, the former is bound to carry out the provisions of the assigned contract and in all respects to comply with the terms of the assignment, as signified by the contract of sale and deed of conveyance of the road. The latter may recover from the defendant the damages it has sustained by reason of the failure of the assignee to carry out the assigned contract: 5 C. J., p. 976, § 168; 4 Cyc. 82 (B); *Atl. & N. C. R. Co.* v. *Atl. & N. C. Co.,* 147 N. C. 368 (61 S. E. 185, 125 Am. St. Rep. 550, 15 Ann. Cas. 363, 23 L. R. A. (N. S.) 228); *Cutting Packing Co.* v. *Packers' Exchange,* 86 Cal. 574 (25 Pac. 52, 21 Am. St. Rep. 63, 10 L. R. A. 369); *Younce* v. *Lumber Co.,* 148 N. C. 34, 36 (61 S. E. 624); *Bach* v. *Boston etc. Consol. Min. Co.,* 16 Mont. 467 (41 Pac. 75); *State* v. *School Dist.,* 51 Neb. 237 (71 N. W. 727); *Union Pacific R. Co.* v. *Douglas County Bank,* 42 Neb. 469 (60 N. W. 886).

7. It may be stated generally that the assignment of a contract operates not merely as an assignment of the moneys thereafter to be earned, but of the whole con-

tract with its obligations and burdens.   After the same has been modified by the parties thereto it is an assignment of the contract as modified: 5 C. J., p. 947, § 122.

In *Atl. & N. C. R. Co.* v. *Atl. & N. C. Co.,* 147 N. C. 368 (61 S. E. 185, 125 Am. St. Rep. 550, 15 Ann. Cas. 363, 23 L. R. A. (N. S.) 228), one Ives who had an oral contract with the plaintiff company to deliver cordwood recovered judgment against it for violation of the agreement.   The company paid the judgment and then sued the defendant on the ground that the Ives contract was assigned to the defendant to whom the plaintiff had leased its railroad and that the defendant owed plaintiff the duty of carrying out the assigned contract.   Plaintiff recovered.   Mr. Justice Hoke at page 231 of the opinion said:

"For while, as heretofore stated, the lessor company was not relieved of the obligation under this contract unless Ives had agreed to accept the lessee in discharge of the former, as between these parties, the lessor and lessee, the force and effect of the assignment were to establish, in any event, a primary liability in the lessee, and, under the general equitable principles of *indebitatus* assumpsit, the lessor having been forced to pay, can recover of the lessee the amount of this enforced recovery.   Keener Quasi Contr., p. 396, 15 A. & E. Ency. Law, 1108.   In the citation from Keener, *supra,* it is said: 'It may be stated as a general proposition that a plaintiff can recover against a defendant as for money paid to his use to the extent that the claim paid by the plaintiff should have been paid by the defendant.' * * (After quoting from the case of *Cutting Packing Co.* v. *Packers' Exchange, supra,* it was said): While this ruling was made to depend to some extent on a section of the California Code, the statute itself is only an embodiment of the generally accepted doctrine applicable to the facts indicated."

In *Cutting Packing Co.* v. *Packers' Exchange*, 86 Cal. 574 (25 Pac. 52, 21 Am. St. Rep. 63, 10 L. R. A. 369), the plaintiff made a contract to purchase and one Blackwood to sell crops of apricots for certain years, stating the minimum and maximum amounts. The agreement was assigned by plaintiff to defendant, but Blackwood refused to accept the defendant in place of the plaintiff. It was performed for two years. During the third year the defendant refused to accept the apricots and the plaintiff received them, sold them upon the market for a less price than that stipulated by the contract, and thereupon brought action against the defendant for the deficiency by reason of the breach of the agreement. Mr. Justice WORKS, speaking for the court, said:

"The obligation thus assumed was apparent on the face of the contract. We therefore think it plain that as the plaintiff, as assignor, was still bound to Blackwood to pay the price stipulated in the contract, notwithstanding the assignment, and as the defendant, as assignee, assumed such obligation, the plaintiff, as between it and the defendant, stood in the nature of a surety for the latter for the performance of the obligation. If this be correct, it then follows, that from the assignment, an implied contract arose between the plaintiff and defendant, whereby the latter became bound to the former to receive and pay for the apricots according to the terms of the original contract."

8. The assignment of a contract does not discharge the assignor from his original undertaking: *Atl. & N. C. R. Co.* v. *Atl. & N. C. Co.*, 147 N. C. 368 (61 S. E. 185, 125 Am. St. Rep. 550, 15 Ann. Cas. 363, 23 L. R. A. (N. S.) 228); *Cutting Packing Co.* v. *Packers' Exchange*, 86 Cal. 574 (25 Pac. 52, 21 Am. St. Rep. 63, 10 L. R. A. (N. S.) 369); *R. L. Co.* v. *S. & P. P. Co.*, 135

N. Y. 216, 217 (31 N. E. 1018) ; 4 Cyc. 84, par. 3; *Martin* v. *Orndorff,* 22 Iowa, 504.

9. The Portland, Eugene & Eastern Railway Company, having been notified to defend the action brought against the Corvallis & Alsea River R. Company, in the Circuit Court for Benton County, if ultimately liable is bound by the judgment in that case to the same extent as though it had been a party to the record. Such judgment is conclusive upon the defendant of the following issues in the present case: (1) That there was a valid contract between the plaintiff and the Lumber Company whereby plaintiff was bound to construct the branch line of railroad into section 20; (2) that the contract was violated; (3) that by reason of the violation of the contract the Lumber Company was damaged in the sum of $18,124: *Astoria* v. *Astoria & Columbia Riv. Ry. Co.,* 67 Or. 549, 550 (136 Pac. 645, 49 L. R. A. (N. S.) 404); *Oceanic Steam Nav. Co.* v. *Campania Transatlantic Espanola,* 144 N. Y. 663 (39 N. E. 360); *Washington Gaslight Co.* v. *Dist. of Columbia,* 161 U. S. 316 (40 L. Ed. 712, 16 Sup. Ct. Rep. 564); *Town of Waterbury* v. *Waterbury Terminal Co.,* 74 Conn. 152 (50 Atl. 3, 40 L. R. A. (N. S.) 1174, note); 23 Cyc. 1270. It was proper for the court to instruct the jury, if it found for plaintiff, to find a verdict for $18,124, and interest thereon at 6 per cent, as the Benton County judgment against defendant conclusively established that amount as the damage suffered by the Lumber Company, and it was clearly proved and not controverted, that plaintiff paid such sum: *Crossen* v. *Grandy,* 42 Or. 286, 287 (70 Pac. 906).

This leaves the main question of the liability of the defendant for the performance of the contract for the extension of the branch line to be tried and considered.

There was no error in the refusal of the trial court to hold that the defendant was not liable nor in the denial of the several motions. It was the duty of the trial court to construe the writing, which it did, but submitted to the jury the question of the identification of the contract and the intent of the parties as to the assignment and advised them that if they found that it was not the intention of the vendor and vendee that the contract in question should be assigned they should find for the defendant.

It appears that the trial court, after construing the writings to the effect as above indicated, over the objection and exception of defendant instructed the jury as follows:

"The alleged contract between the plaintiff and the Corvallis Lumber Manufacturing Company was an assignable contract, with or without the consent of the Lumber Company, and if you find from the evidence that the said contract, if you find there was such a contract, was assigned to the defendant, then the defendant was bound to the plaintiff to perform the contract."

The charge of the court was in strict accord with the law as shown by the authorities above referred to. The defendant requested the court to charge the jury in accordance with the law as contended for by defendant raising practically the same questions as the motions above adverted to. This request does not require a separate discussion. We find no error in the record. It follows that the judgment of the lower court should be affirmed and it is so ordered.

AFFIRMED.   REHEARING DENIED.

MR. JUSTICE HARRIS took no part in the consideration of this case.

MR. JUSTICE McCAMANT delivered the following dissenting opinion:

I am unable to concur in so much of the foregoing opinion as approves the following instruction given by the court below, and to which the defendant excepted:

"The alleged contract between the plaintiff and the Corvallis Lumber Manufacturing Company was an assignable contract, with or without the consent of the Lumber Company, and if you find from the evidence that the said contract, if you find there was such a contract, was assigned to the defendant, then the defendant was bound to the plaintiff to perform the contract."

The assignee of a contract is undoubtedly liable on its covenants if he expressly assumes them. In two of the cases cited in the majority opinion the liability of the assignee was predicated on such assumption: *Younce* v. *Lumber Co.*, 148 N. C. 34, 36 (61 S. E. 624); *Bach* v. *Boston Co.*, 16 Mont. 467 (41 Pac. 75). It is also well settled that in case the assignee claims the fruits of the contract, he will be held to have assumed its burdens. The case of *Atlantic Co.* v. *Atlantic Co.*, 147 N. C. 368 (61 S. E. 185, 125 Am. St. Rep. 550, 15 Ann. Cas. 363, 23 L. R. A. (N. S.) 228), charges the assignee with liability under the contract, on this ground: plaintiff had entered into a continuing contract with one Ives to purchase cordwood cut by Ives for use on plaintiff's locomotives. Plaintiff subsequently leased its railway line to the defendant and the defendant accepted cordwood from Ives for a period of time. Thereafter the defendant substituted coal for wood as fuel on its locomotives and sought to repudiate its obligations under the Ives contract. It was properly held that the defendant by enjoying the fruits of the contract had impliedly assumed its burden.

The case of *State* v. *School District,* 51 Neb. 234 (71 N. W. 727), was the same kind of a case.   It involved the assignment of a building contract.   The assignee accepted the assignment and completed the building. The court held that while he was entitled to the emoluments of the contract he was also chargeable with its burdens.   *Union Pacific Co.* v. *Douglas Bank,* 42 Neb. 469 (60 N. W. 886), is to the same effect.   A contract for the performance of work had been assigned by Mrs. Wells to Clarkson.   Clarkson claimed the benefits of the contract and was held bound by its burdens.   We quote from the opinion on pages 478 and 479 (on pages 888, 889, of 60 N. W.) of the report:

"We do not mean that the intention of the parties was by the assignment *eo instante* to impose upon Clarkson Mrs. Wells' obligations."

"We do not here determine that by the assignment he *ipso facto* rendered himself liable personally for the wages of the employee.   What we do hold is that under such an assignment he cannot be permitted in equity to avail himself of the benefits of the contract without discharging its obligations."

The remaining case cited in the majority opinion is *Cutting Co.* v. *Packers' Exchange,* 86 Cal. 574 (25 Pac. 52, 21 Am. St. Rep. 63, 10 L. R. A. 369).   The facts as reported in this case are meager but if the case can be interpreted as holding that the mere acceptance of the assignment of a contract charges the assignee with the obligations of the assignor thereunder the case is out of harmony with the weight of authority and should not be followed.   The law is stated in 2 R. C. L., pages 625, 626, as follows:

"A question has been raised as to whether the assignment of a contract operates to cast on the assignee liabilities imposed by the contract on the assignor, and

84 Or.—35

it may be stated as a general principle that the assignment does not have any such effect.''

In *New York Phonograph Co.* v. *Davega,* 127 App. Div. 222, 234, 111 N. Y. Supp. 363, the court says:

''There are many decisions to the effect, and none that my research has disclosed to the contrary, that in the absence of express agreement the assignee of a personal contract is not liable on the covenants of his assignor.''

In *Anderson* v. *New York Co.,* 132 App. Div. 183, 188, 116 N. Y. Supp. 954, the court says:

''The assignment was, doubtless, made and accepted with knowledge of all the provisions of the contract assigned, but something more than that was necessary to obligate the assignee to carry out the covenants of the vendee named in the contract. This could only be done by a specific agreement to that effect.''

To the same effect see: 2 Elliott on Contracts, § 1456; *Suydam* v. *Denton,* 84 Hun, 506, 508 (32 N. Y. Supp. 333); *Heinze* v. *Buckingham,* 17 N. Y. Supp. 12; *Smith* v. *Kellogg,* 46 Vt. 560, 564; *Consolidated Co.* v. *Peers,* 166 Ill. 361, 374 (46 N. E. 1105, 38 L. R. A. 624); *Tolerton Co.* v. *Anglo-Californian Bank,* 112 Iowa, 706 (84 N. W. 930, 50 L. R. A. 777).

It is to be noted that the contract which was assigned to the defendant was only a liability. It is stated in Anson on the Law of Contract, Section 293, that ''a promisor cannot assign his liability under a contract.'' Applying this principle to the facts in this case it is at least to be said that the defendant should not be presumed to have agreed to discharge plaintiff's liability on its contract with the Corvallis Lumber Manufacturing Company without convincing evidence to that effect.

By the instruction above quoted the jury was told that the mere fact of the assignment spelt a liability for the defendant. Under this instruction plaintiff was not required to prove that the defendant had assumed the obligations of the contract or even accepted the assignment. In my opinion this was prejudicial error calling for the reversal of the judgment.

MR. JUSTICE BURNETT concurs in the result of the above dissenting opinion.