Motion to dismiss denied June 2, 1925, argued March 29, affirmed
April 19, 1927.

## MARIZA ROGERS *v*. PHILLIP BLUMAUER.

(255 Pac. 324.)

</div>

**Compromise and Settlement—Evidence of Agreement to Pay in Consideration of Dismissal of Action Held Sufficient for Jury.**

1.   Evidence that defendant, in consideration of dismissal of action, agreed to make monthly payments to plaintiff's mother for life, *held* sufficient to take the case to the jury.

**Assignments—Assignment Held to Include Claim on Contract to Pay—"Property."**

2.   Assignment of all assignor's "goods, possessions and properties," authorizing assignee to collect for herself all debts owing to assignor, embraces claim of assignor against defendant on his agreement to pay her a certain amount per month for life; the word "property" including everything which is the subject of ownership either real or personal, or choses in action.

**Assignments—Payments to Become Due as Well as Past-due Payments on Contract to Pay Monthly for Life Held Included in Assignment of All Assignor's Properties.**

3.   Assignment of all assignor's properties *held* to include payments thereafter becoming due as well as past-due payments on agreement to pay assignor a certain sum monthly for life.

**Compromise and Settlement—Excluded Evidence as to Prior Relations and Litigation Held not Germane, in Action Involving Issue of Agreement to Pay in Consideration of Dismissal of Action.**

4.   Evidence as to prior relations and litigation, which was excluded, *held* not germane to issue of whether defendant agreed to pay plaintiff's mother a certain sum monthly for life, in consideration of dismissal of her action.

**Appeal and Error—Use of Word "Robbed" by Plaintiff, Relative to Defendant's Conduct, Held not Ground for Complaint, Jury not Appearing to have Been Influenced.**

5.   Plaintiff's and her attorney's use of word "robbed," in referring to dealing with her mother by defendant, who also character-

---

2.   See 2 R. C. L. 655.

ized plaintiff as a dangerous woman, *held* not ground for complaint; it not appearing the jury were carried away or influenced by the parties' quarrel.

---

Assignments, 5 **C. J.**, p. 864, n. 18.
Property, 32 **Cyc.**, p. 648, n. 13, p. 649, n. 17, 18.

From Multnomah: T. E. J. DUFFY, Judge.

Department 2.

This is an action to recover money on a contract. The cause was tried to the court and a jury and a verdict rendered in favor of plaintiff. From a consequent judgment defendant appealed.

Plaintiff alleges, in effect, that on March 26, 1909, one Frances Murray Blumauer was plaintiff in an action against Phillip Blumauer, defendant herein, pending in the Circuit Court to recover the sum of $50,000. That on or about said date Frances Murray Blumauer and Phillip Blumauer, defendant, entered into a contract by the terms of which Frances Murray Blumauer waived and withdrew any or all claims and demands against the estate of defendant's father Simon Blumauer, deceased, or any of the heirs of said estate, and consented to the dismissal, with prejudice, to her action against defendant, neither side to recover costs in the action. That in consideration of such dismissal and waiving and withdrawing of claims, defendant promised and agreed to and with Frances Murray Blumauer, to pay her the sum of $50 per month, payable monthly during her life; that Frances Murray Blumauer performed all the terms and conditions upon her part, pursuant to the contract; that defendant failed to perform his part of the contract, except that payments of $50 a month were made to Frances Murray Blumauer, to and including the month of April, 1921, when they

were stopped. That Frances Murray Blumauer died December 14, 1923; that prior to her death, for a valuable consideration, she assigned and transferred her rights under the contract to plaintiff.

The answer of defendant admits the death of Frances Murray Blumauer and denies the other allegations of the complaint.                    Affirmed.

For appellant there was a brief over the name of *Messrs. Greene & McCurtain,* with an oral argument by *Mr. A. H. McCurtain.*

For respondent there was a brief and oral argument by *Mr. Harry G. Hoy.*

BEAN, J.—At the close of plaintiff's testimony in chief defendant interposed a motion for a nonsuit and reserved an exception to the court's refusal to grant the same. This is the vital question in the case.

The stipulation dismissing the case referred to in the complaint recites that the "cause having been fully settled and compromised between the parties, it is hereby stipulated and agreed that the plaintiff waives and withdraws any and all claims and demands of whatsoever nature against the above-named defendant and against the estate of Simon Blumauer, deceased, or any of the heirs thereof, and consents to the dismissal of the above-entitled cause with prejudice, neither side to recover costs."

The action was dismissed accordingly on April 4, 1919. Mariza Rogers, plaintiff, testified as bearing upon the terms of the dismissal as follows:

"Q. Did you, Mrs. Rogers, ever have any conversation with the defendant, Philip Blumauer, with reference to the settlement between him and your mother,

that is to say, the settlement of the action she brought against him for the fifty thousand dollars? A. For that ten shares?

"Q. Yes, for the ten shares that you called it? A. Yes, on one occasion.

"Q. Just state to the jury what that was. A. The family were estranged. We did not speak. But on one occasion I met Mr. Blumauer quite accidentally in the corridor of the Multnomah Hotel, where we had lived, where my mother lived for eleven years. I was very much incensed at her parting with her shares at all for this miserable little stipend of fifty dollars a month, and I spoke to Mr. Blumauer, whom I have known for many, many years, and upbraided him for placing my mother in such a position that she was forced to accept this fifty dollars a month in lieu of her claim for the ten shares, the fifty thousand dollars. And I said, 'Why did you do it, why did you oppress her like that, an old, old woman, and I wasn't here, there was nobody to protect her, why did you get her to sign away her claim without anyone?' He said, 'Well, at least she has dismissed the suit and she has now settled upon her legally, fifty dollars a month. She can depend upon that.' It was at the very apex of the high prices, during the war, and I said, 'What would fifty dollars a month do my mother, what good, what if she fell ill, it is nothing.' 'Well,' he says, 'she has it, it is settled on her for life, she won't starve.' That ended the conversation."

The stipulation was dated March 26, 1919. Plaintiff further testified, to the effect, that payments were made by defendant to her mother beginning in March or April and were made for a year, or until May, 1921. The evidence of the assignment of the claim consists of an instrument which reads as follows:

"KNOW ALL MEN BY THESE PRESENTS, that I, Dr. Frances M. Blumauer, am selling and transferring to

my good daughter Mrs. A. M. Rogers, all of my goods, possessions and properties that I have not already transferred to her. She has earned it all. She is entitled to it all. All debts owing to me she shall collect in her own name and for herself. All my prescriptions and formulae, the results of my close study in the action of drugs upon the skin and scalp and upon cell growth are herein included. In consideration of my love for her, and the love and care she has bestowed and is now giving to me for my encouragement and help in this time of trouble I do this thing and give her all.

"Signed and sealed March 1st, 1922.

"FRANCES M. BLUMAUER.    (Seal.)"

Phillip Blumauer, defendant, testified in regard to the settlement of the action as follows:

"A. The only thing was that you were handling it and Mr. Senn came to you and said that the Doctor needed money, and you said to me that the Doctor needed some money, she was sick, and that Mr. Senn wanted us to agree to give her a certain amount of money, and we instructed you not to make any agreement whatever, but if the Doctor was in need of any money we would give her money, whatever she needed we would give her,—look out for her, which we always have.

"Q. Did you ever make any agreement yourself or promise or have any understanding with Dr. Frances Murray Blumauer that you would pay her fifty dollars a month for the rest of her life or for any period? A. No, sir.

"Q. Did you ever authorize your attorney to make any such a payment? A. No, sir.

"Q. Tell the jury what is the fact as to whether or not after that case was dismissed you or your brothers or the Estate of Simon Blumauer did give Mrs. Blumauer money from time to time. A. Yes, I have."

The defendant further stated to the effect that he stopped giving Dr. Blumauer money on account of a suit she commenced in April, 1921.

1. The question of whether defendant agreed, in consideration of the dismissal of the action mentioned, to pay Dr. Blumauer, the mother of plaintiff, $50 per month during her life, depended upon the truth of the testimony of plaintiff in regard to the conversation she had with defendant in the Multnomah Hotel. The defendant denied having any such conversation, or that he had conversed with plaintiff since 1917. If the jury found that plaintiff's statement in that respect was true, then they might reasonably conclude that defendant agreed to make the payments as alleged in the complaint.

It is argued with much force on behalf of defendant that the statement attributed to defendant by plaintiff "is consistent with his voluntary donation of said sum to her" only. It appears without dispute that the proposition for such payments was made to defendant on the part of Dr. Blumauer and discussed at the time of entering into the stipulation, which recited that the action had been "settled and compromised," left plenty of room for the suggestion there was some kind of an agreement. It was for the jury to say what the defendant meant by his statement if they found he made it and not for the court. The testimony tended to show that the very competent attorneys signing the stipulation knew nothing of the agreement being made and it was not embodied in the instrument as it probably would have been had they had anything to do with it.

If the jury believed that the defendant stated to plaintiff that her mother had "dismissed the suit

and has now settled upon her legally fifty dollars a month, * * she has it, it is settled on her for life," the question of when and where and who was present when the compact was made would not be very important. The defendant might well construe and relate his own contract. The plaintiff's testimony, taken with the other evidence of the payments being made for a time, was sufficient to take the case to the jury on this point.

2. Defendant objected and excepted to the instrument as evidence of the assignment of the claim to plaintiff. It appears that the assignment was written by Dr. Blumauer herself. The intent appears therefrom to transfer to her daughter, the plaintiff, all of her "goods, possessions and properties," and authorizes plaintiff to collect for herself all debts owing to the assignor. The assignment embraces whatever claim she had against the defendant. The fact that it refers to other things does not change the transfer of the debt. The word "property" used in the document may include everything which is the subject of ownership, either real or personal, or choses in action: 32 Cyc. 648. A common type of rights subject to assignment is one for the payment of money: 1 Williston on Contracts, § 413, p. 766. Any words which fairly indicate an intention to make the assignee owner of the claim are sufficient, and the same construction should be given the words whether they are oral or written: 1 Williston on Contracts, § 434, p. 792. The assignment would convey the right to money payments to become due as well as those past due: *Corvallis & A. R. Co.* v. *Portland E. & E. R. Co.,* 84 Or. 524, 539, 540 (163 Pac. 1173); 5 C. J., p. 864, § 31; 2 R. C. L. 660, § 17.

3. It is contended by defendant that in any event the plaintiff could not recover the payments becoming due after the date of the assignment and requested that the court charge the jury accordingly. With this contention we cannot agree. There was no error in refusing to give the requested instruction.

4. The deposition of Emanuel H. Lauer, a witness for defendant, was taken. Plaintiff objected to the admission of the following interrogatory and answer thereto, viz.:

"Int. No. 3. What connection did you have with the Blumauer Frank Drug Company, a corporation doing a wholesale drug business in Portland, Oregon, and covering what period of time?"

"To the third interrogatory I answer: I was connected with the Blumauer Frank Drug Company in the years 1895 to 1906, and I was a stockholder and a director and an officer of the corporation; I was vice-president at one time."

Other questions and answers in the same category were excluded by the court, and defendant reserved exceptions and assigns the rulings as error. The testimony attempted to be elicited was directed to matters pertaining to shares of stock, and to former litigation between Dr. Blumauer and defendant, and others, and the trial court decided to "sweep it all out." The testimony offered was not germane to any of the issues in the present case and was properly excluded.

5. Defendant moved the court for a new trial for practically the same alleged errors as referred to above. We find no error in refusing to grant a new trial. The defendant credits plaintiff with instigating the former litigation referred to and there was

a bitter feeling between defendant and plaintiff which the trial court could not prevent cropping out upon the trial. Harsh language was used upon both sides. Plaintiff used the word "robbed" in referring to the dealings between her mother and defendant and his associates and the attorney for plaintiff referred to the same word. Defendant characterized plaintiff as a "dangerous woman" in business affairs.

We do not think that the jury was carried away or influenced by the quarrel between the relatives. Defendant had a fair trial. We find no reversible error in the record. The judgment is affirmed.

AFFIRMED.

BURNETT, C. J., and BROWN and COSHOW, JJ., concur.